### HENRY MARR *versus* HANNAH GIVEN.

To authorize a conveyance of land by attorney, it is not necessary that a power to *convey land* should be *expressly* delegated; it may be imparted by implication.

In the construction to be given to a power of attorney, the intentions of the parties are to be regarded.

The attorney was duly authorized, " to bargain, sell, grant, release and convey to such person or persons, and for such sum or sums of money, as to my said attorney shall seem most for my advantage, and upon such sale or sales, convenient and proper deeds, with such covenant or covenants, general or special, of warranty, quitclaim, or otherwise, as to my said attorney shall seem expedient, in due form of law, as my deed or deeds, to make, seal, and deliver and acknowledge," but the power was silent as to what was to be sold or conveyed; and the attorney conveyed land, and the grantee entered into possession thereof, and continued to occupy for nearly twenty years, during which time the grantor never asserted any title to the land. In an action demanding the land against one who had no title under the grantor, *it was held,* that it was the intention of the parties to authorize a sale and conveyance of all the rights of the grantor in any real estate.

WRIT OF ENTRY demanding a dwellinghouse and small tract of land in Wales, in this County.

Robert Brinley originally owned a small farm, of which the demanded premises are a part, and on Jan. 2, 1819, conveyed the same to John Given, husband of the tenant, who at the same time gave back a mortgage to secure the whole or part of the purchase money, both which deeds were immediately recorded. The demandant then introduced a quitclaim deed of the same premises from John Given to Rufus Marr, under whom he claimed, dated May 22, 1823, and duly recorded. This deed was executed by the agency of Elias Moody, acting as agent and attorney of John Given. To prove the authority of Moody to give the deed a power of attorney was produced of which a copy follows.

"Know all men by these presents that I John Given, of St. David in the County of Charlotte, Province of New Brunswick, Yeoman, have made, constituted and appointed and by these presents do make, constitute and appoint Elias Moody, of Lisbon in the County of Lincoln, State of Maine, to be my sufficient and lawful attorney for me and in my name to bargain, sell, grant, release and convey to such person or persons and for such sum or sums of money, as to my said attorney shall seem most for my advantage and benefit, and upon such sale or sales, convenient and proper deeds with such a covenant or covenants, general or special of warranty, quitclaim or otherwise, as to my said attorney shall seem expedient, in due form of law, as my deed or deeds to make, seal and deliver and acknowledge, and for me and in my name, to accept and receive, all and every the sum or sums of money; or other consideration or considerations the same may be sold for, which shall be coming to me on account of said sale or sales, and upon the receipt thereof suitable acquittance or acquittances in my name and stead to make, seal and deliver; and generally giving to my said attorney full power and authority touching the premises, to do, execute, proceed and finish in all things in as ample a manner as I might do if personally present. Hereby ratifying and confirming all lawful acts done by my said attorney by virtue hereof."

This was dated May 1, 1823, was signed and sealed by John Given, was witnessed, and acknowledged before a justice of the peace. It was proved, that before this time Given had left his wife at Wayne, and gone into the Province of New Brunswick, where he has since resided. Brinley had brought a suit upon the mortgage and recovered judgment in April, 1822, and made an entry under it to foreclose the mortgage. The tenant, Mrs. Given, employed Moody to go to New Brunswick and get the power of attorney to save the place from Brinley's mortgage. " She knew the place was under mortgage, and wanted to redeem it from the proprietor ; and on Moody's return, it was concluded to let Rufus Marr have the place for the purpose of taking up the mortgage." Marr went to Augusta and there paid Brinley's agent the amount of the mortgage, $210,42. The entry on the execution, in the handwriting of Brinley's agent, since deceased, was this. " The amount of the within mortgage paid by Rufus Marr." The mortgage did not appear to have been discharged or assigned at that time, and on August 8, 1841, Brinley gave a quitclaim deed of the land to Rufus Marr. It was proved by parol, that when the deed from Given to Marr was made, the latter said, that Given should have the place at any time by paying him back the money he had paid. A witness stated the value of the place at that time, and at the time of the trial, to be about $800,00. The house and a small part of the land had been occupied by Mrs. Given, but Marr put a family into a part of the house for a time. The remainder of the land had been occupied by Marr from the time of his taking the deed. John Given had no estate but this land in Wayne, when the deed to Marr was made.

The tenant was defaulted by consent, and it was to be taken off, if the demandant was not entitled to recover.

*Wells*, for the tenant, said that she was in the occupation of the premises, and besides had a sufficient interest therein to defend, and to put the demandant on proof of his title. *Gibson* v. *Crehore*, 5 Pick. 146.

The mortgage was discharged by the payment of the money due, and therefore the deed from Brinley, in 1841, conveyed nothing. The title of the demandant depends exclusively on the validity of the deed executed by Moody.

This deed is void, and nothing passed by it, because the power of attorney produced does not authorize Moody to convey the land. Nor is this defence inequitable, as Marr paid but one fourth of the value of the premises, and now claims to hold the whole. He was already in possession of much more than enough to pay him.

Powers of this description should be construed strictly. 5 Mass. R. 36: Story's Agency, 66, 67. The power does not authorize Moody to convey any thing. There is no description whatever of the matter on which the power was to operate. That it could not have been intended to authorize the conveyance of real estate is certain, because the essential words of a deed, heirs and assigns, are not found in the power.

*May,* for the demandant, contended that the tenant had no interest in the premises, and was to be considered as a mere wrongdoer, and therefore cannot object that the attorney exceeded his authority. A mere tenant in possession cannot do it. 5 Johns. R. 43.

Moody had sufficient authority, under the power of attorney, to execute the deed. That instrument is full and perfect in all its parts, except as to the property to be bargained, sold and conveyed. The words bargain and sell, import a power to convey land by deed of bargain and sale, this being the most common mode of conveyance in the United States. 4 Kent, 495. The several parts of the power were examined in the argument, and the conclusion drawn from them, that the design and intention was, to give to the attorney an unlimited power to convey any property, which in fact consisted only of this equity of redemption. The facts may be looked into in order to ascertain the intention. 13 Petersd. Ab. 640; 3 M. & Selw. 99; 4 Bibb, 530. The only object of inserting in the power a description of the property to be conveyed, is to limit the authority.

But if we are mistaken in this, the deed from Brinley conveys the land to us, or operates as an assignment of the mortgage. *Freeman* v. *Paul*, 3 Greenl. 260; *Hatch* v. *Kimball*, 16 Maine R. 146; *Wade* v. *Howard*, 11 Pick. 289; *Vose* v. *Handy*, 2 Greenl. 322.

The opinion of the Court was drawn up by

SHEPLEY J. — The intentions of the parties are to be regarded in the construction of the power of attorney from John Given to Elias Moody. It is not necessary, that a power to convey lands should be expressly delegated. It may be imparted by implication. Com. Dig. Poiar, A. 2. Moody was authorized " to bargain, sell, grant, release, and convey;" " and upon such sale or sales, convenient and proper deeds, with such covenant or covenants, general or special, of warranty, quitclaim, or otherwise, as to my said attorney shall seem expedient, in due form of law, as my deed or deeds, to make, seal, deliver, and acknowledge." The power of attorney is silent as to what he was to sell and convey. The language used was appropriate to the sale and conveyance of real estate according to the forms in use in this part of the country, and not usual in the sale and conveyance of personal property. The power is sufficiently broad to authorize the agent to sell and convey whatever estate Given might then own. And it would seem to be necessary to permit it to have that effect, or to decide, that it was wholly void. Moody, by virtue of it, claimed the power to convey the right in equity to redeem the estate, which Given had before conveyed in mortgage to Brinley, and made a conveyance of it to Marr, who caused it to be recorded, and entered into possession of the greater portion of the estate, and has continued to possess it without interruption for nearly twenty years. Given, during all that time, has never denied, that Moody was fully authorized to sell, has never claimed any interest in the land, and does not now claim any. The defendant was instrumental in procuring the conveyance to be made to Marr under that power, and in inducing him to advance the money due upon the mortgage. And does

not therefore place herself in a position to claim such a limited construction of the power, as will wholly defeat it, and deprive Marr of the land. She must be regarded as a stranger to the title. The language used in the power and explained by the conduct of the parties for so long a period authorizes the conclusion, that it was their intention to authorize a sale and conveyance of all the rights of Given in any real estate.

*Judgment for demandant.*