## MUTH ET AL., RESPONDENTS, *v.* GODDARD ET AL., APPELLANTS.

| 28 | 237 |
|----|-----|
| 30 | 12  |

(No. 1,914.)

(Submitted April 27, 1903.   Decided May 25, 1903.)

*Power of Attorney—Construction—Authority of Attorney— Trust Deed—Power of Sale—Right to Exercise—Effect of Death of Grantor.*

1. An attorney in fact authorized to sell, convey, and mortgage the grantor's property may execute a trust deed conveying the grantor's individual property as security for the payment of a debt due from a firm of which he is a partner.

2. Where a person is liable on notes executed by a firm in payment of firm debts because a partner in the firm, a guaranty of the payment of the notes, executed by his attorney in fact, imposes no additional obligation.

3. Under Code of Civil Procedure, Section 3821, providing that a power of sale may be conferred on the mortgagee or any other person, to be exercised after a breach of the obligation for which the mortgage is security, and Code of Civil Procedure, Section 1293, declaring that, if a mortgage confers a power of sale after a breach, foreclosure may be had, an attorney in fact under a general power of attorney to sell, convey, and mortgage the grantor's property may secure the payment of his grantor's debt by executing a trust deed conveying the grantor's property, and authorizing the trustee or his successor in trust to sell the same in case of nonpayment of the indebtedness.

4. Whether an attorney in fact under a general power of attorney may execute a trust deed containing a stipulation for attorney's fees in case the deed is enforced by an action is immaterial where the trustee in the deed sells the property under a power of sale therein granted.

5. A trust deed, given as security for a debt, and containing a stipulation authorizing the trustee to sell the property after default, authorizes the trustee to exercise the power after the grantor's death; it being a power coupled with an interest, and therefore not revoked by the grantor's death.

6. Where a trust deed, given as security for a debt, conveys to him the legal title to the property therein described, and authorizes him to sell the same after default, the death of the grantor does not affect the trustee's right to exercise the power of sale.

7. Under Code of Civil Procedure, Section 2603, authorizing the foreclosure of mortgages though the mortgagor is dead, a trustee in a trust deed given as security for the payment of a debt, and authorizing him to sell the property after default, may, after the death of the grantor, exercise the power of sale without reference to the administration of the grantor's estate.

*Appeal from District Court, Lewis and Clarke County; J. M. Clements, Judge.*

SUIT by William Muth, as administrator of the estate of Albert G. Clarke, deceased, and others, against L. A. Goddard and others, to restrain defendants from selling lands described in a trust deed under the power of sale therein granted. From an order granting the injunction, defendants appeal. Reversed.

## STATEMENT OF THE CASE.

On the tenth day of October, 1890, Albert G. Clarke, Sr., was about to leave the state of Montana, to be absent during the winter, and on that day he executed to his son, Charles A. Clarke, the following power of attorney:

"Know all men by these presents, that I, Albert G. Clarke, Sr., of Helena, Lewis and Clarke County, Montana, have made, constituted and appointed and by these presents do make, constitute and appoint Charles A. Clarke, of said city, county and state aforesaid, my true and lawful attorney for me and in my name, place and stead, and for my use and benefit to ask, demand, sue for, recover, collect and receive, all such sums of money, debts due, accounts, interest, dividends, annuities and demands whatsoever as are now or shall hereafter become due, owing, payable or belonging to me, and have, use and take all lawful ways and means in my name or otherwise for the recovery thereof by attachment, arrest, distress or otherwise, and to compromise and agree for the same and acquittances or other sufficient discharges of the same for me and in my name to make, seal and deliver; to grant, contract, agree for, purchase, receive and take, lands, tenements and hereditaments, and to accept the seisin and possession of all lands and all debts and other assurances in the law therefor, and to lease, let, demise, bargain, sell, remise, release, convey, mortgage and hypothecate lands tenements, hereditaments upon such terms and conditions and under such covenants as he shall see fit, also to bargain and agree for, buy, sell, mortgage, hypothecate and in any and every way and manner deal in and with goods, wares and merchandise, choses in action, and other property in possession

or in action, and to make, do and transact all and every kind of business of what nature and kind soever, and also for me, and in my name and as my act and deed to sign, seal, execute and deliver and acknowledge such deeds, leases and assignments of leases, covenants, indentures, agreements, mortgages, hypothecations, bills of lading, bills, bonds, notes, receipts, evidences of debt, releases and satisfactions of mortgage, judgments and other debts and such other instruments in writing of whatever kind and nature as may be necessary or proper in the premises; giving and granting unto my said attorney full power and authority, to do and perform all and every act and thing whatsoever requisite and necessary to be done in or about the premises, as fully to all intents and purposes as I might or could do if personally present, hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue of these presents."

Albert G. Clarke, Sr., never revoked this power, and it ceased to be operative only at his death. In November, 1899, Mr. Clarke, Sr., lay in his last sickness. For quite a long time he had been a member of the firm of Raleigh & Clarke. This firm was then, November, 1899, owing about $35,000, about $23,000 of which sum was due the Union Bank & Trust Company, of which George L. Ramsey was cashier. The firm of Raleigh & Clarke was unable to pay the bank anything upon this indebtedness, and Ramsey notified W. B. Raleigh, who, with Albert G. Clarke, Sr., composed the firm, "that, unless the matter was fixed up at once, he would attach Mr. Clarke," to which Raleigh replied that he (Raleigh) had made every effort, but was at the end of his resources. Raleigh then sent for Charles A. Clarke, and acquainted him with the situation. In the meantime the power of attorney was placed of record. Then followed a series of negotiations extending over a number of days. The result was that Raleigh turned over all his property to Albert G. Clarke, Sr. As he said, "I turned over everything that I had; the interest in Raleigh & Clarke and everything; made a clean sweep." He also, in the name of

Raleigh & Clarke, executed to the Union Bank & Trust Company seven notes for the sum of $5,000 each. These notes represented the money already due the bank, and cash in hand which the bank advanced to pay the other creditors of the firm. Charles A. Clarke then, assuming to act under his power of attorney, indorsed the notes as follows: "For value received, I hereby guarantee the payment of the within notes at maturity, or at any time thereafter, with interest as specified, until paid, waiving demand, notice of nonpayment, and protest. A. G. Clarke, by Charles A. Clarke, His Attorney in Fact." And, likewise acting as his father's attorney in fact, Charles A. Clarke thereupon executed to John H. Tucker, as trustee, and party of the second part, and the Union Bank & Trust Company, party of the third part, a trust deed whereby he purported to convey certain of his father's real estate for the purpose of securing the payment of the seven promissory notes aforesaid. In this deed of trust it was stated that the grantor "has granted, bargained, sold and conveyed, and does by these presents grant, bargain, sell, convey, and confirm, unto the said party of the second part, with full power of substitution to his succesors in trust, and assigns, forever, the following described tracts or parcels of land," etc. It was provided in the trust deed that in case of a default in the conditions thereof "the grantor herein does fully empower said trustee, original or substituted, his successors or assigns, and it is hereby made his special duty, at the request of the holders of the obligation secured hereby at any time made after default, as aforesaid, to take such steps as may be necessary for the collection of said debt, principal and interest, and to collect and sue for any rents due or to become due on said premises, and without process of law to enter upon and take possession of or let said premises, and either before or after said entry, when the trustee, his successors or assigns see fit, to sell the property herein conveyed, or any part thereof, together or in parcels, at public auction, for cash or on credit, at a place, time, and after the advertisement by him given, substantially conforming to and

as required by law in the cases of sales on execution at the time of the sale, and to execute and deliver to the purchaser or purchasers thereof good and sufficient deed or deeds in fee simple for the same, which shall vest the complete and unincumbered title of the said property, and be a bar against the grantor herein, his heirs or assigns, and all persons claiming under them or any of them, of all right, interest, or claim in or to said property and all parts thereof. * * *" In the trust deed it was provided that an attorney's fee of five per cent. on the amount of the principal recovered should be a lien upon the property, and be taxed and collected as are other costs, in case the conditions of the indenture be enforced by an action in court.

All these negotiations were completed on December 16, 1899. On December 23 following Albert G. Clarke, Sr., died. In due time the seven notes were presented in the form of a claim against the estate of Albert G. Clarke, deceased, and allowed. Thereafter the said notes and trust deed were assigned to one L. A. Goddard. Some time after the maturity of the notes, Goddard, through his attorneys, Cullen, Day & Cullen, commenced to execute the power of sale contained in the trust deed. Thereupon William Muth, as administrator of the estate of Albert G. Clarke, deceased, William H. Clarke, and Albert G. Clarke, Jr. (the two Clarkes claiming to be entitled to the whole of the residue of the said estate to the exclusion of their brother Charles A. Clarke), as plaintiffs, commenced this action against the said L. A. Goddard, Cullen, Day, & Cullen, and Charles A. Clarke, as defendants, to enjoin the defendants from selling the lands described in the trust deed under the power of sale, etc. Upon the filing of the complaint a temporary restraining order was issued, together with an order to show cause why the injunction should not be granted.

Upon the hearing of the order to show cause the court entered its order granting the injunction as prayed for. From this order the defendants appeal.

*Messrs. Cullen, Day & Cullen,* for Appellants.

The power of attorney was broad and comprehensive enough to authorize C. A. Clarke to execute the deed of trust in question. (*Barr* v. *Schroeder,* 32 Cal. 618; *Wood* v. *McCaine,* (Ala.), 42 Am. Dec. 613; Mechem on Agency, 1st Ed. Sec. 6, 304, 391; 18 Am. & Eng. Ency. Law, 1st Ed. p. 873; Story on Agency, Secs. 61, 58, 59, 74; *Marr* v. *Given* (Me.), 39 Am. Dec. 600; *Posner* v. *Bayless,* 59 Md. 56; *Reinick* v. *Wheeler,* 4 McCrary, 119; *Carson* v. *Smith* (Minn.), 77 Am. Dec. 539; *Burnett* v. *Boyd,* 60 Miss. 627; 1 Am. & Eng. Ency. Law, 2d Ed., 1902; *Wimberly* v. *Windham,* 16 So. 23; *Lamy* v. *Burr* (Mo.), 88 Am. Dec. 135; *Heard* v. *Pierce,* 54 Am. Dec. 757; *Benjamin* v. *Benjamin,* 39 Am. Dec. 384; *Percy* v. *Hedrick,* 98 Am. Dec. 774; *Merchants' Bank* v. *Bank,* 44 Am. Dec. 665; *Foster* v. *Smith,* 88 Am. Dec. 604; Civil Code, Secs. 3250, 1941.)

*Messrs. Walsh & Newman,* and *Messrs. Toole & Bach,* for Respondents.

Under the power of attorney, C. A. Clarke did not have authority to guarantee the payment of the notes of the firm of Raleigh & Clarke, and to execute the mortgage or deed of trust to secure that guaranty. (*Nipple* v. *Hammond,* 4 Colo. 211; *Wolfley* v. *Rising,* 8 Kan. 278; *Rossiter* v. *Rossiter,* 8 Wend. 495; *Batty* v. *Carswell,* 2 Johns. 48; *Roundtree* v. *Davidson,* 18 N. W. 518; *Claflin* v. *C. J. Works,* 11 S. E. 721; *Reynolds* v. *Terrel,* 86 Ill. 576; *N. Y. Iron Mine* v. *Bank,* 39 Mich. 644; *Gouldy* v. *Metcalf,* 12 S. W. 830; *Malloye* v. *Conbrough,* 31 Pac. 622; Reinhart on Agency, Secs. 197-201; *Bank* v. *Hope Mining Co.,* 3 Mont. 146; 1 Parsons on Notes and Bills, 107; *Stainback* v. *Read,* 11 Gratt. 281; *Little Rock* v. *State Bank,* 3 Ark. 227; Story on Agency, 7th Ed., Par. 165; *Tate* v. *Evans,* 7 Mo. 419; *Mechanics' Bank* v. *Schaumberg,* 38 Mo. 228; *Farmington S. B.* v. *Buzzell,* 61 N. H. 612; *Gulick* v. *Grover,* 33 N. J. Law, 463; *Cuyler* v. *Hastings,* 5 Hun. 559; *King* v. *Sparks,* 77 Ga. 285; *Hutton* v. *Towns,* 6 Leigh, 47;

*Wallace* v. *Bank of Mobile,* 1 Ala. (N. S.) 565; *Kingsley* v. *Bank,* 3 Yerger, 106; *Nichol* v. *Green,* Peck's Rept. 227; *Atwood* v. *Munnings,* 7 B. & Cres. 278; 1 Am. & Eng. Ency. Law, 2d. Ed., p. 1000; Civil Code, Secs. 3197, 2213; *In re Kern's Estate,* 35 Atl. 231; *Witz* v. *Gray,* 20 S. E. 1019; *Bohart* v. *Oberne,* 13 Pac. 392; *Essick* v. *Buckwalter,* 16 Atl. 849; Mechem on Agency, Sec. 274; *Dodge* v. *Hopkins,* 14 Wis. 685; *Gilbert* v. *Howe,* 47 N. W. 643; *Penfold* v. *Warner,* 55 N. W. 680; *Sullivan* v. *Miller,* 24 S. W. 819; *Johnston* v. *Wright,* 6 Cal. 373; *Frost* v. *Erath Cattle Co.,* 17 S. W. 52; *Horne* v. *Ingraham,* 16 N. E. 868; *Ferreira* v. *DePew,* 17 How. Pr. 418; Brandt on Sureties & Guaranty, Par. 20; *Bryan* v. *Berry,* 6 Cal. 394; *Durham* v. *Oddie,* 14 Am. Dec. 190; *Coulter* v. *Portland Trust Co.,* 26 Pac. 565; *Mora* v. *Murphy,* 23 Pac. 63; Bates on Partnership, Par. 158, 159; *Campbell* v. *Hastings,* 29 Ark. 512.)

A power of sale of mortgaged premises on default, inserted in a mortgage, based on a valuable consideration, cannot be revoked by any act or deed of the mortgagor; but is revoked or ceases the instant of his death, and cannot thereafter be executed. (Kerr, Supplement to Wiltse on Foreclosure of Mortgages, p. 1190; *Johnson* v. *Johnson,* 27 S. C. 309, 3 S. E. 606; *Lathrop* v. *Brown,* 15 Ga. 312; *Yates* v. *Prior,* 11 Ark. 58; Jones on Mortgages, Sec. 1794; *Wilkins* v. *McGee,* 13 S. E. 84; *Locket* v. *Hill,* Federal Cases, 8443.)

Foreclosure under a power of sale is inconsistent with the probate law. (Code of Civil Procedure, Secs. 2603, 2610, 2701; *Robertson* v. *Paul,* 16 Tex. 472; *McLane* v. *Paschal,* 47 Tex. 369; *Black* v. *Rockman,* 50 Tex. 94; *Abney* v. *Pope,* 52 Tex. 228; *Rogers* v. *Watson,* 17 S. W. 29; *Williams* v. *Washington,* 19 S. E. 1.)

The alleged trust deed provides fees for the trustee and attorney. This is beyond the scope of power under the power of attorney. (*Pac. Rolling Mills Co.* v. *Dayton, etc. Ry. Co.,* 5 Fed. 852; Code of Civil Procedure, Secs. 3150, 3146; *Fitzgerald* v. *Hansen,* 16 Mont. 474.)

MR. COMMISSIONER CALLAWAY prepared the statement of the case and the opinion for the court.

The following questions have been presented and argued by counsel: (1) Was Charles A. Clarke authorized by the power of attorney, to execute the trust deed conveying his principal's individual property to secure the notes of the firm? And herein, did he have the authority to include in the trust deed a power of sale, and a provision for an attorney's fee in case of foreclosure? (2) Can the power of sale be executed now that Albert G. Clarke, Sr., is dead? We will treat these questions *scriatim.*

1.    Authorities in great number have been cited by counsel in discussing the right of Charles A. Clarke to execute the trust deed under the power of attorney above set forth. We have examined them all, and also have made much independent research, in order to arrive at a correct solution of the propositions involved; but no case has been cited to or discovered by us, which, construing a power of attorney like the one in question, decides any similar point.

The instrument in question may be denominated an unrestricted general power of attorney. It will be noticed that the donor of the power placed his agent in a position to perform almost every act that may ordinarily arise in the transaction of business. Practically the only limitation it contains is to the effect that the attorney must act for the principal's use and benefit. It must be presumed that in giving this power the principal understood the full meaning of the words he employed, and undertook the risk to which he might be subjected in case his agent should carry the given power to its utmost limit. Being a business man, he must have known that the transactions of business do not always result in profit, and he therefore delegated to his agent, his son, very extensive powers, including the authority to pledge his credit and mortgage his property. Being about to leave the state of Montana for the winter, and knowing that he could not personally attend to his business affairs, he

confided in his son, and placed him in his stead. And the fiduciary relation then established continued until the donor died.

"Much of the business of the world is transacted by agents, or through agencies, representing their principals. It is a rule recognized by all the authorities that the acts of the agent, within the scope of his employment, are the acts of his principal, and the latter is bound by them.   *   *   *   The rules governing the construction of written instruments generally are resorted to in construing powers of attorney. (18 Am. & Eng. Enc. Law (1st Ed.) p. 871.) The obvious meaning of the terms used is not to be restricted or extended by implication in the absence of necessity. Another well supported rule relating to powers of attorney is that the intention of the parties, as ascertained by the language used, governs." (*White* v. *Furgeson,* 29 Ind. App. 144, 64 N. E. 49.)

. "But it is said the power must be strictly construed. This may be true, but it does not require that it shall be so construed as to defeat the intention of the parties. Where the intention fairly appears from the language employed, that intention must control. A strained construction should never be given to defeat that intention, nor to embrace in the power what was not intended by the parties." (*Hemstreet* v. *Burdick,* 90 Ill. 444. And see *Marr* v. *Given,* 23 Me. 55, 39 Am. Dec. 600; *Carson* v. *Smith,* 5 Minn. 78, 77 Am. Dec. 539; *Lamy* v. *Burr,* 36 Mo. 85, 88 Am. Dec. 135; *Posner* v. *Bayless,* 59 Md. 56.)

"If the writing be open to two constructions, one of which would uphold while the other would overthrow the contract, the former is, where possible, to be chosen." (Mechem on Agency, Sec. 304.) And where third persons are concerned in cases of doubt, the general rule is that the words in the power are to be construed most strongly against the grantor. (Story on Agency, Sec. 74; Code of Civil Procedure, Sec. 3140.)

Under a general power of atorney, however, the agent cannot lawfully do any act unless it be for the principal's use and benefit. Thus he cannot lawfully act under it for the private bene-

fit of himself or third persons. Relying on this principle, counsel for plaintiffs contend that under the authority granted Charles A. Clarke he could not lawfully execute the trust deed; not for the reason that the power of attorney is insufficient in form to warrant his execution of it, but because in so doing he was securing a debt of the partnership, and thus was not acting for the use and benefit of his principal. We do not agree with counsel. Albert G. Clarke, Sr., as a member of the firm of Raleigh & Clarke, was liable to third persons for all the obligations of the partnership. (Civil Code, Secs. 1941, 3250.) Now, where the principal was liable for every dollar of the indebtedness of the partnership, and the partnership was unable to pay its debts, and the other partner had arrived at the end of his resources, what would have been the result if the attorney in fact had neglected to take any action whatsoever? Obviously, the result would have been that the creditors of the firm of Raleigh & Clarke would have instituted suits and levied attachments; merged their claims in judgments running against Albert G. Clarke, Sr., and W. B. Raleigh; issued and levied execution; sold all the firm property, and then a sufficient amount of Clarke's separate property to satisfy their demands. Indeed, the creditors might have levied upon the firm property and the individual property of Albert G. Clarke, Sr., simultaneously. Such action might have entailed great loss upon the solvent partner, Clarke; and it appears that this state of affairs inevitably would have resulted had it not been for the prompt action of Clarke's attorney in fact, and, under these circumstances, it seems clear that he acted for his principal's use and benefit. Whether any benefit accrued to W. B. Raleigh by reason of the action of Charles A. Clarke as attorney in fact, it is unnecessary to inquire. Doubtless, when Albert G. Clarke, Sr., paid the debts of the firm, it relieved W. B. Raleigh to some extent, but did it change the status of Clarke, Sr., when he was personally liable for the payment of all of these debts, irrespective of any benefit which might or might not incidentally accrue to W. B. Raleigh, his partner?

Upon this point plaintiffs say in their brief, "It is not pretended that Charles A. Clarke could, or attempted to, release Mr. Raleigh from the liabilities of the firm." The cases cited by plaintiff which they assert sustain their contention that the attorney in fact of a general partner cannot mortgage his principal's property to secure a partnership liability, even though the principal is solely responsible therefor, are not in point. No case has been cited by them which states the proposition that under a general power of attorney an agent may not mortgage his principal's property in order to save the principal from loss. They mainly rely upon the language found in Mechem on Agency, Sec. 307. We think counsel place a broader construction upon this section than was intended by the learned author. The section, read as an entirety, does not conflict with our views in this case, and an inspection of the cases cited in support of the text discloses this clearly.

There can be no doubt that the attorney in fact, unless especially authorized so to do, cannot bind the principal for the private benefit of the agent himself, or of third persons only. And while we purpose to discuss the applicability of the authorities cited in Mechem on Agency and by counsel to the question here involved, we suggest, in passing, this question: When Albert G. Clarke, Sr., was liable for all the debts of the firm of Raleigh & Clarke, and his individual property was about to be seized by attachment levied by creditors of the firm, did not the agent act in the sole, separate, and individual business of his principal when he took such action as prevented him from being thus greatly injured? And just here it must be remembered that Albert G. Clarke, Sr., was at this time the owner of all the property of Raleigh & Clarke. Raleigh, while still liable to the firm creditors, had transferred all his property to Clarke.

The first case cited by Mr. Mechem in support of Section 307, *supra,* and discussed by counsel, is *Stainback* v. *Read,* 11 Grat. 281, 62 Am. Dec. 648, in which it appears that the controversy arose over a bill of exchange which was not

drawn in the business of the principal, but in that of the attorney in fact exclusively. *Attwood* v. *Munnings,* 7 B. & C. 278, 4 Eng. Rul. Cases, 364, is a leading and much misquoted case. The defendant had given to his wife a power of attorney authorizing her to accept for him "such bill or bills of exchange as should be drawn or charged on him by his agents or correspondents as occasion should require." She accepted a bill of exchange which was not drawn by the principal's agent for that purpose; in other words, the drawer of the bill of exchange had no authority to draw it, nor was it within his ostensible authority. The court held that the wife, as attorney in fact, exceeded her power in accepting the bill, as the agent who drew it exceeded his in drawing it. *North River Bank* v. *Aymar,* 3 Hill, 262, was a case in which the attorney in fact executed notes for the accommodation of third persons, the notes having no connection with the principal's business. The notes were, however, drawn within the ostensible authority of the attorney in fact; and, while they were held to be fraudulent as between the principal and the attorney in fact, nevertheless they were held to bind the principal when in the hands of a *bona fide* holder. In the case of *Camden Safe Deposit and Trust Co.* v. *Abbott,* 44 N. J. Law, 257, the note in suit "was put forth for the personal benefit of the attorney, who converted its proceeds to his own use." In *Wallace* v. *Branch Bank at Mobile,* 1 Ala. (N. S.) 565, the attorney in fact was given authority "for the plaintiff and in his name to draw or indorse promissory notes," etc., and the court said: "It is very clear that there is no express delegation of authority to the attorney to draw or indorse notes for the mere accommodation of third persons; such notes, though they might be drawn or indorsed in his name, certainly would not be for the principal himself. Gallagher's right to make and negotiate paper was not unlimited, but was to be restricted to a transaction in which the plaintiff at least had the semblance of interest." In *Adams Express Co.* v. *Trego,* 35 Md. 47, it was held that a general superintendent of the express company, with authority to employ and discharge agents

and direct their conduct, make contracts, and exercise a general supervision over the business of the company, had no power to license one of his employes, an assistant superintendent, to engage in and carry on a business in competition with and injurious to the express company. The court said, "The powers of an agent are to be exercised for the benefit of the principal only, and not of the agent or of third parties."

Plaintiffs also quote at length from *Mechanics' Bank* v. *Schaumburg,* 38 Mo. 228. In that case it appeared that Orleana C. Schaumburg and Martha A. Wills each gave to John W. Wills a power of attorney authorizing him "in her business, for her use, and in her name" to perform certain acts; among others, "to borrow money and execute notes." Wills was president of the Mechanics' Bank, to which institution he was indebted in the sum of $45,000. As attorney in fact he executed notes in the joint names of his two principals for $85,000 to the cashier of the bank, who drew checks for the amounts in favor of Wills, and the latter immediately deposited the same to his own credit in the bank. All of this money was used by Wills for his private benefit. The bank knew that the loan was actually made to John W. Wills in his name, for his use, and in his business. The court correctly held that Wills' principals were not bound by such acts on the part of their agent. The court held in *Ferreira* v. *Depew,* 17 How. Prac. 418, that the words employed in the power of attorney did not confer upon the attorney the right to transfer all the principal's property to a trustee for the payment of his (the principal's) debts. In *Johnston* v. *Wright,* 6 Cal. 373, the principal authorized the attorney in fact "to settle and adjust all partnership debts, accounts, and demands, and all other accounts and demands now subsisting, or which may hereafter subsist, between me and any person or persons whomsoever," and, among other purposes, the power was given to execute releases. The attorney discharged a debt due the principal and two others jointly. In reaching its conclusion the court said: "In *Attwood* v. *Munnings,* 7 Barn. & Cress. 279, the power was to endorse bills 'for

the principal, in his name, and to his use,' and also to 'accept bills drawn by his agents or correspondents.' In the suit upon a bill drawn by one of the partners of the principal for the benefit of the partnership, and accepted by the agent, it was held that the power extended only to the individual business of the principal, and not to his partnership affairs." It is apparent that the court did not understand the ruling in *Attwood* v. *Munnings,* as no such decision was reached in that case. The Californa court then went on to say that, as the debt released was neither an individual nor a partnership debt, but a joint debt, the language of the power of attorney was not broad enough to authorize the attorney's act, and said that, if the principal had personally executed the release, and had used only the language contained in the power of attorney, it would have been totally ineffectual to release the covenant on which the controversy rested.

Whether the agents in the last two cases cited acted or assumed to act for the use and benefit of their respective principals, we are unable to ascertain. All of the other authorities cited by plaintiffs will be found, upon examination, to treat of cases wherein the agent acted either for the private benefit of himself or third persons, or else clearly transcended the authority granted him.

In the power of attorney before us Charles A. Clarke is given authority "to sell, remise, release, convey, mortgage, and hypothecate lands, tenements, and hereditaments upon such terms and conditions and under such covenants as he shall see fit." And also "to sign seal, execute, and deliver and acknowledge" such mortgages, hypothecations, bills, bonds, notes, receipts, evidences of debt, and "such other instruments in writing of whatever kind and nature as may be necessary or proper in the premises." Under the languge used, can it be successfully contended by any one that Charles A. Clarke had not the right to execute and deliver notes, mortgages, and hypothecations? If he could execute such, for what purpose would the instruments be executed? Certainly to secure debts on the part of the prin-

cipal. When the principal executed the power of attorney he must have contemplated that at some time it would be necessary for his attorney in fact to execute instruments in writing in recognition of debts owed by him, the principal; otherwise, for what purpose were such words as we have last quoted inserted in the power of attorney? (*Lamy* v. *Burr,* 36 Mo. 85, 88 Am. Dec. 135.) If we were to say that the attorney in fact had no right to execute notes, mortgages, and hypothecations, we might as well say that the principal never executed any power of attorney at all. We have heretofore shown that the debt secured by the trust deed in question was the principal's debt, and, after W. B. Raleigh had executed the instruments conveying all of his property to Albert G. Clarke, Sr., the debt secured was practically the sole and individual debt of Clarke, as between himself and Raleigh. The attorney in fact could not take a new partner into the firm of Raleigh & Clarke, and neither could he dissolve the partnership under his power; but when Raleigh, the other partner, voluntarily turned over all of his property to Clarke, Clarke's attorney in fact, under the power given him, had the right to receive and protect it.

Plaintiffs contend that Charles A. Clarke, as attorney in fact, had no right to execute the guaranty which he indorsed upon the notes. As we view it, this guaranty was useless and nugatory. Albert G. Clarke, Sr., was already liable for the payment of the notes, and the guaranty executed on his behalf imposed upon him no additional obligations whatever, as it was in terms a guaranty of his own debt. (*In re Wm. H. Blumer & Co.* (D. C.), 13 Fed. 622.) The question, then, is, as Charles A. Clarke had the right as attorney in fact to secure the payment of the notes in question, did he have the right to execute the trust deed in controversy, including the power of sale? Every general power implies every particular power necessary to its exercise or performance; in other words, "the authority to accomplish a definite end carries with it the power to adopt the usual legal means to accomplish the object. Chitty on Contracts (Ed. 1860), 236; *Anderson* v. *Coonley,* 21 Wend. 279." (*Piercy* v. *Hedrick,* 2 W. Va. 458, 98 Am. Dec. 774.)

In the case of *First National Bank* v. *Bell S. & C. M. Co.,* 8 Mont. 32, 19 Pac. 403, the court, speaking through Mr. Chief Justice McConnell, said: "While the exact boundary between mortgages with powers of sale, and deeds of trust, is not very clearly defined, we think the deed in question should be classed with the former. * * * But, from the view we take of it, we do not think it important to determine to which class it technically belongs. * * * 'A mortgage is a pledge or security for a debt, whatever may be the form which the transaction takes, whether a simple mortgage deed in form, or a mortgage with a power of sale, or a deed in trust, or a deed absolute on its face, accompanied by an agreement in writing to reconvey or to sell, or to do any other thing upon the payment of a certain sum of money. Courts of equity look upon it as a mortgage, and deal with it as such.' Perry on Trusts, Sec. 602d." In reviewing and affirming this case the United States Supreme Court said: "The power of sale in the indenture, whether we call it a deed of trust or a mortgage, does not change its character as an instrument for the security of the indebtedness designated, but it is an additional authority to the grantee or mortgagee, and, if he does not choose to foreclose the mortgage by any of the ordinary methods provided by law, he can proceed under the power added for the sale of the property to obtain payment of the indebtedness." (*Bell S. & C. M. Co.* v. *First Nat'l Bank,* 156 U. S. 470, 15 Sup. Ct. 440, 39 L. Ed. 497.) Section 3821, Civil Code, provides: "A power of sale may be conferred by a mortgage upon the mortgagee or any other person, to be exercised after a breach of the obligation for which the mortgage is a security." Section 1293, Code of Civil Procedure, provides: "When a mortgage confers a power of sale, either upon the mortgagee or any other person, to be executed after a breach of the obligation for which the mortgage is a security, either an action may be maintained under this chapter to foreclose, or proceedings may be had under the provisions of the mortgage." We therefore conclude that Charles A. Clarke, as attorney in fact, had the right to execute a mort-

gage in the form of a trust deed, containing a power of sale, just as he would have had the right to execute a mortgage in the ordinary form. Creating a trustee with power of substitution to his successors in trust was not delegating a delegated power. In effect, it merely provided a means for obviating the appointment of a receiver and foreclosure by an action in court in case of a default by the principal. Furthermore, Charles A. Clarke under the trust deed conveyed away the whole legal title. His power over the property then ceased. His act was not a delegation of power, but an execution of the power conferred under the power of attorney. (*Lamy* v. *Burr, supra.*)

It is also contended by plaintiffs that, even had Charles A. Clarke, as such attorney, the right to execute the trust deed in question, he had no right to include therein a provision for an attorney's fee. It is unnecessary for us to decide this question. The mortgage foreclosure was commenced under the power of sale therein contained, whereas it is distinctly specified in the trust deed that the attorney's fee shall be collected only if the mortgage be foreclosed by an action. Plaintiffs are therefore complaining of something which is not in controversy in this action.

2. Can a power of sale be executed after the death of the mortgagor? The decisions are not in harmony as to whether such a power can be so executed, for the reason that some affirm and some deny the power to be one coupled with an interest. If the power is one coupled with an interest, it can be executed after the death of the grantor; otherwise not. Chief Justice Marshall, in *Hunt* v. *Rousmanier's Administrators,* 8 Wheat. 174, 5 L. Ed. 589, in speaking of such a power, uses the following language: "We hold to be clear that the interest which can protect a power after the death of a person who creates it must be an interest in the thing itself. In other words, the power must be ingrafted on an estate in the thing. The words themselves would seem to import this meaning. 'A power coupled with an interest' is a power which accompanies or is connected

with an interest." In *Bergen* v. *Bennett,* 1 Caines' Cases, 1, 2 Am. Dec. 281—a leading case on this subject—the court said: "It is admitted that a naked authority expires with the life of the person who gave it; but a power coupled with an interest is not revoked by the death of the grantor. In my opinion, the power contained in the mortgage is of the latter description. A power simply collateral and without interest, or a naked power, is when, to a mere stranger, authority is given to disposing of an interest in which he had not before, nor hath by the instrument creating the power, any estate whatsoever. But when power is given to a person who derives, under the instrument creating the power or otherwise, a present or future interest in the land, it is then a power relating to the land." It was said by our own court, in *First National Bank* v. *Bell S. & C. M. Co., supra:* "But the mortgagee has an interest in the land mortgaged. He has a lien upon it for the security of his debt, and this will support the power of sale, and so couple it with an interest in the land that it becomes a part of the security and irrevocable." Says Mr. Jones, in his work on Mortgages (Section 1792): "This being [a power] coupled with an interest in the estate cannot be revoked or suspended by the mortgagor. Of course, after his death the power cannot be exercised in his name, but the authority to execute it in the name of the grantee continues." And see cases cited; *Whitmore* v. *San Francisco Savings Union,* 50 Cal. 146; *More* v. *Calkins,* 95 Cal. 435, 30 Pac. 583, 29 Am. St. Rep. 128.

From the foregoing authorities it clearly appears to us that the power of sale included in the trust deed in question is a power coupled with an interest; but, irrespective of this, the legal title to the property having passed to the trustee and from the mortgagor, the death of the latter could in no wise affect the trustee's right to carry out the trust which the mortgagor had reposed in him.

It is argued, however, that foreclosing under a power of sale is inconsistent with our probate law, and that the mortgagee should enforce his rights either through the regular course of

administration or by foreclosure in court.    This argument can-
not be maintained.    "The law may suspend its own process.
As it gives the process, it may regulate it.    But deeds of trust
and mortgages with the power of sale arise from the consent and
agreement of parties, and there is no propriety in depriving
creditors of the fruits of their foresight and caution." (*Beatie
v. Butler,* 21 Mo. 313, 64 Am. Dec. 234.)    The Texas cases
cited by plaintiffs are not in point.    See *In re Horsfall's Estate,*
20 Mont. 495, 52 Pac. 199.    It follows that the trustee or his
successor in trust, having the legal title, could execute the power
of sale (a power coupled with an interest) without reference
to the administration of the mortgagor's estate, if he so elected.
(Code of Civil Procedure, Section 2603.)

In our opinion, the order should be reversed.

PER CURIAM.—For the reasons given in the foregoing opin-
ion, the order is reversed, and the cause remanded.

Rehearing denied June 13, 1903.