## CHAPMAN v. REGIONAL AGRICULTURAL CREDIT CORPORATION OF SPOKANE, WASH.

### No. 1237.

District Court, D. Montana, Great Falls Division.

Feb. 20, 1941.

Raymond E. Dockery and H. Leonard De Kalb, both of Lewistown, Mont., for plaintiff.

W. Q. Van Cott and D. Eugene Livingston, both of Salt Lake City, Utah, and J. R. Wine, of Helena, Mont., for defendant.

PRAY, District Judge.

Herein the plaintiff complains that before his appointment as administrator of the estate of Simon T. Douglas, deceased, which occurred on April 4, 1935, and before the appointment of any administrator or executor whatsoever, and after the death of said Simon T. Douglas, which took place January 12, 1935, the defendant, on or about February 5, 1935, wrongfully took into its possession, sold, alienated, converted and disposed of to its own use certain personal property and effects of said decedent, set forth in the amended complaint, of which said Simon T. Douglas up to the time of his death, and his estate and plaintiff since that time, was and were lawfully possessed, of the value of '$35,500.20, and to the damage of the estate in double that value, all of which is alleged to be contrary to the provisions of Section 10140 Revised Codes of Montana, reading as follows: "If any person, before the granting of letters testamentary or of administration, embezzles or alienates any of the moneys, goods, chattels, or effects of a decedent, he is charged therewith and liable to an action by the executor or administrator of the estate for double the value of the property so embezzled or alienated, to be recovered for the benefit of the estate."

Defendant denies the foregoing, except admitting the appointment of administrator. Then follows a lengthy recitation in a further answer, affirmative defense and cross complaint; that the defendant is duly organized and existing under and by virtue of Section 201(e) of an act of Congress known as the Emergency Relief and Construction Act of 1932, 12 U.S.C.A. § 1148, and has its principal place of business in the city of Helena, State of Montana, and that it is an instrumentality of the United States Government; that all of the capital stock of the defendant corporation and all its property, including the note and mortgage involved herein, are beneficially owned by the United States, and that the corporation, under the authority conferred, has been engaged in the business of making loans on livestock and other personal property and taking notes and chattel mortgages as security therefor.

That on December 27, 1933, said Douglas executed his promissory note to the defendant in the sum of $17,000, due December 15, 1934, and to secure the payment thereof and any additional advances, if any, not in excess of $20,000, he executed and delivered to defendant, as mortgagee, his certain chattel mortgage, bearing said date, covering the livestock and other personal property therein described; that said mortgage was duly and regularly signed and acknowledged by said Douglas, and had endorsed thereon a written receipt by him showing that a true copy of said mortgage has been delivered to him; there was also attached the required affidavit on behalf of the mortgagee, and the mortgage was filed in the office of the County Clerk of Fergus County, Montana, on January 8, 1934.

That the said indebtedness was not paid at maturity, and on or about November 27, 1934, said Simon Douglas made written application to defendant for a renewal and continuation of said mortgage indebtedness, and pursuant thereto executed a new note dated December 19, 1934, and likewise a new chattel mortgage of even date therewith as security therefor, which was filed in the office of the County Clerk of Fergus County, Montana, on December 28, 1934. It appears that no money was ever loaned and no advances ever made under the renewal loan because of the death of said Simon Douglas, who died intestate in Fergus County, Montana, on January 12, 1935. It further appears that in making such loans the custom and procedure followed was to submit them for approval to the local counsel of defendant before they could be closed or completed. Defendant alleges that immediately after the death of Simon Douglas it was necessary to employ help to care for and preserve the personal property described in the chattel mortgage dated December 27, 1933, "for the reason that no heir of said Simon Douglas, nor any personal representative of his, nor any other person, assumed or pretended to care for, protect or preserve such security, and that no person was ap-

pointed administrator of the estate of said deceased until on or about the 9th day of April, 1935." That on the date of his death said Simon Douglas was indebted to defendant in the sum of $16,328.48, inclusive of interest at the rate of 6½ per cent per annum. Defendant alleges that in order to protect its security and the interests of the estate and in pursuance of the power of sale contained in the mortgage, the property therein described was sold at public auction to the highest bidder on February 5th, 1935, in accordance with the terms of said mortgage and as provided by statute; that the total gross amount received for the property at such sale was $15,002.10, which defendant alleges "was and is the real and market value of said mortgaged property and all thereof on said date." That there was a balance of $1,694.64 owing defendant on the chattel mortgage indebtedness which was presented to the plaintiff herein as administrator of the Simon Douglas estate, and was not allowed, and judgment is asked on this amount, against plaintiff, with interest thereon at 6½% from February 5, 1935, until paid.

Because of the strong reliance placed upon it by defendant in support of its contentions, the first case to be considered will be that of Muth v. Goddard, 28 Mont. 237, 72 P. 621, 98 Am.St.Rep. 553, relative to the survival of the power of sale contained in a mortgage after the death of the mortgagor, followed by other authorities of material interest in dealing with the theories and arguments of counsel. Whether the power of sale which was contained in the aforesaid chattel mortgage survived the death of the mortgagor seems to depend upon whether it was a power coupled with an interest.

In Bell S. & C. M. Co. v. First National Bank, 156 U.S. 470, 15 S.Ct. 440, 443, 39 L.Ed. 497, cited in the Muth case, it was held, in reviewing and affirming said case, found in 8 Mont. 32, 19 P. 403, 411, that: "The power of sale in the indenture, whether we call it a deed of trust or a mortgage, does not change its character as an instrument for the security of the indebtedness designated, but it is an additional authority to the grantee or mortgagee, and, if he does not choose to foreclose the mortgage by any of the ordinary methods provided by law, he can proceed under the power added for the sale of the property to obtain payment of the indebtedness." The Mon-

tana Supreme Court said in the above case, which was affirmed as above noted: "But the mortgagee has an interest in the land mortgaged. He has a lien upon it for the security of his debt, and this will support the power of sale, and so couple it with an interest in the land that it becomes a part of the security, and irrevocable."

As to the query, whether the power is one coupled with an interest and thereby survives the death of the grantor, Chief Justice Marshall held in Hunt v. Rousmanier's Administrators, 8 Wheat. 174, 204, 5 L.Ed. 589: "We hold it to be clear, that the interest which can protect a power, after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing. The words themselves would seem to import this meaning. 'A power coupled with an interest,' is a power which accompanies, or is connected with, an interest."

Another well reasoned case, cited in the Muth case, is that of Bergen v. Bennett, 1 Caines Cas. 1, 2 Am.Dec. 281, which held: "It is admitted that a naked authority expires with the life of the person who gave it; but a power coupled with an interest is not revoked by the death of the grantor. In my opinion the power contained in the mortgage is of the latter description. A power simply collateral and without interest, or a naked power, is when, to a mere stranger, authority is given to disposing of an interest in which he had not before, nor hath by the interest creating the power any estate whatsoever. But when power is given to a person who derives, under the instrument creating the power, or otherwise, a present or future interest in the land, it is then a power relating to the land." Would not the power of sale contained in the chattel mortgage in question be governed by the same rules as those applied in a mortgage of real estate, and should not the power of sale be held to be coupled with an interest irrespective of whether it applied to the one or the other? Does it not clearly appear that the interest involved in the power of sale whether contained in a mortgage of personalty or of realty is identical in effect, and would have to be construed as a power coupled with an interest, in either case?

In 2 Corpus Juris Secundum, Agency, page 1175, § 86, the following appears: "Although ordinarily an agency is determined by the death of the principal, yet

where the authority given the agent is auxiliary to an interest in the subject matter of the power, as considered in § 75, and there has been such a transfer of an interest, or title, or beneficial interest, to the donee-agent of the power that he can exercise it in his own name, his agency will survive the death of the principal, unless such a power is expressly given only for the lifetime of the principal."

The concluding paragraphs in the Muth case [28 Mont. 237, 72 P. 627, 98 Am.St. Rep. 553], read as follows: "From the foregoing authorities it clearly appears to us that the power of sale included in the trust deed in question is a power coupled with an interest; but, irrespective of this, the legal title to the property having passed to the trustee and from the mortgagor, the death of the latter could in no wise affect the trustee's right to carry out the trust which the mortgagor had reposed in him. It is argued, however, that foreclosing under a power of sale is inconsistent with our probate law, and that the mortgagee should enforce his rights either through the regular course of administration or by foreclosure in court. This argument cannot be maintained. 'The law may suspend its own process. As it gives the process, it may regulate it. But deeds of trust and mortgages with the power of sale arise from the consent and agreement of parties, and there is no propriety in depriving creditors of the fruits of their foresight and caution.' Beatie v. Butler, 21 Mo. 313, 64 Am.Dec. 234. The Texas cases cited by plaintiffs are not in point. See [In re] Horsfall's [Estate], 20 Mont. 495, 52 P. 199. It follows that the trustee or his successor in trust, having the legal title, could execute the power of sale (a power coupled with an interest) without reference to the administration of the mortgagor's estate, if he so elected. Code Civ.Proc. § 2603."

The Muth and the Bell cases, supra, are cited in 41 C.J. 927 to sustain the rule that a power of sale in a mortgage is coupled with an interest and not affected by the death of the mortgagor. Also see 2 C.J.S., Agency, page 1175, § 86, citing, among other cases, Gardner v. First Nat. Bank, 10 Mont. 149, 25 P. 29, 10 L.R.A. 45. It was further held in the Bell case, supra: " * * * But the mortgagee has an interest in the land mortgaged. He has a lien upon it for the security of his debt, and this will support the power of sale, and so couple it with an interest in the land that

it becomes a part of the security, and irrevocable."·

Counsel cites Jones on Chattel Mortgages and Conditional Sales, to the effect that the death of the mortgagor does not deprive the mortgagee of his remedy by foreclosure and sale, either in equity under a power of sale, or under a statute; that he is not required to file his claim in the administration proceedings, but may proceed to foreclose by notice and sale, just as he might have done had the mortgagor survived. In Mathew v. Mathew, 138 Cal. 334, 71 P. 344, 345, the court held: "The death of the mortgagor did not affect the rights of the mortgagee under the contract, and the executor possessed no new rights to the property, or to the possession of it, that were not in the mortgagor in his lifetime." The decisions referred to by counsel for the respective parties enable the court to determine with reasonable certainty when a power of sale survives the death of the grantor, but there appears to be nothing in the language of the decision in the Muth case, strongly relied upon by defendant, or in the other cases, even remotely hinting that a statute suspending the power of sale until the appointment of an administrator was in contemplation and held to be without force or virtue. The mortgagee's remedy by foreclosure and sale or under the power of sale or his rights under the mortgage would not have been impaired in any way by his observance of the provisions of Sec. 10140, R.C.M.

The defendant has argued at great length his theory that the power of sale contained in the mortgage survived the death of the mortgagor, and this court is of the opinion that such power did so survive, but whether it did or did not so survive, seems to be far from being determinative of the real issue in this case. The principal question here is whether section 10140, R.C.M., heretofore quoted, should be applied and the double penalty enforced or whether it should be held for naught because of the claim of good faith on the part of the defendant. In citing Mathew v. Mathew, 71 P. 344, defendant contends that the death of a mortgagor can not affect the rights of the mortgagee. But as it appears to the court, after the death of Simon Douglas and before the appointment of an administrator, the only control the defendant could exercise over the property of the deceased, described in the mortgage, was to possess and preserve it, awaiting

the appointment of an administrator, as required by the provisions of the statute relating to the administration of estates of deceased persons, and especially the section heretofore quoted. During this period the power of alienation is suspended, and there seems to be no exception whatsoever. If the power of sale survived, as the court has held, it was suspended temporarily, until the appointment of an administrator to look after the interests of the estate. Having disposed of that feature of the case it will now be necessary to consider the defense of good faith on the part of the defendant in violating the plain provisions of section 10140, R.C.M. A case relied upon by defendant to sustain its contention is that of Delfelder v. Poston, 42 Wyo. 176, 293 P. 354, but an entirely different state of facts is there presented. In that case an agreement for the sale of the mortgaged property for $140,000 was entered into with the mortgagor several days before his death, and the property was transferred to mortgagee according to the agreement, with the full acquiescence and approval of the widow who was thereafter appointed executrix. The property mortgaged was valued at $93,000, and the amount credited on the mortgage was $140,000, which was the sum agreed to by the mortgagor. Obvious reasons appear from a reading of the decision why the court declined to apply the double penalty. Many other cases have been examined with the result that the court is convinced that the greater weight of authority, under like or similar circumstances, would require a strict observance of the statute in question.

It appears from the testimony that representatives of the defendant in making the sale were acting with knowledge of the provisions of law prohibiting the sale before the appointment of an administrator. At the time and place of sale there were present a lawyer, holding the office of County Attorney, and a banker from a near-by town, both of whom protested the sale as illegal before it was begun. It would seem that the representatives of defendant possessed information from a trustworthy source, and in any event were put upon enquiry, as to defendant's rights in respect to the sale of decedent's property before an administrator was appointed.

The court has considered the evidence in regard to the value of the personal property included in the mortgage and sold at public auction by representatives of the de-

fendant, and is of the opinion that there is substantial proof to justify placing the value of the property sold, at the time of sale, at $17,000, which is nearly two thousand dollars more than the price obtained at the auction sale aforesaid, which the court believes from the evidence was honestly conducted but under unfavorable conditions for such a sale. The statute in question directs that if any person alienates any of the moneys, goods, chattels, or effects of a decedent under the circumstances established in this case that he is charged therewith and liable to an action by the executor or administrator for double the value of the property so alienated, which would require the court in the instant case to award a judgment in favor of plaintiff in double the amount of the above sum, with costs, and it is so ordered.

Findings of ultimate facts and conclusions of law in accordance with the foregoing views may be submitted in compliance with the rule.