## McClanahan *v.* Breeding et al.

[No. 21,332. Filed June 10, 1909.]

1. Principal and Agent.—*Powers of Attorney.—Construction.— Statutes.—Intoxicating Liquors.*—Powers of attorney are construed the same as other written instruments, and when drawn in the exercise of a statutory right, such statute becomes a part thereof. p. 460.

2. Principal and Agent.—*Powers of Attorney.—Construction.—* The construction of a power of attorney should accord with the intention of the donor and be such as to secure to him the desired object; but should be construed against him, in case of doubt, when third persons are interested. p. 460.

3. Intoxicating Liquors.—*Remonstrances.*—A majority of the legal voters of a township or city ward may remonstrate against the granting of a license to retail liquors to a named individual or to anyone. p. 461.

4. Intoxicating Liquors.—*Remonstrances.—Judicial Questions.—* A proceeding to secure a license to retail liquors is a civil action, and each applicant has a right to contest the remonstrance. p. 461.

5. Intoxicating Liquors.—*Remonstrances.—Powers of Attorney.—* Voters may remonstrate through an attorney in fact against the granting of a license to retail liquors. p. 461.

McClanahan *v.* Breeding—172 Ind. 457.

6.   INTOXICATING LIQUORS.—*Remonstrances.*— Voters can remonstrate against the granting of a license to retail liquors to anyone for two years, and may remonstrate again at the end of such period.   p. 462.

7.   INTOXICATING LIQUORS.—*Public Policy.—Police Power.*—Provisions for the regulation of the saloon business are a part of the police power, which is unlimited and continuing, and cannot be surrendered.   p. 462.

8.   INTOXICATING LIQUORS.—*Licenses.—Public Policy.—Parties.*—No question of public policy is involved in the granting or refusing of a license to retail liquors, and the State is not a party thereto. p. 462.

9.   PUBLIC POLICY.—*Meaning.*—Public policy is a question of law, and not of fact.   p. 463.

10.   STATUTES.—*Suspending Operation of.—Intoxicating Liquors.*— The voters do not suspend the operation of the law in remonstrating or refusing to remonstrate against the granting of a license to retail liquors, but such law is always in force in every locality.   pp. 463, 464.

11.   PUBLIC POLICY.—*General Good.*—The principle of public policy condemns acts which tend to injure the public welfare, and such principle is ordinarily governed by the constitutions, laws, and decisions of the several states.   p. 463.

12.   INTOXICATING LIQUORS.—*Remonstrances.—Powers of Attorney. —Continuance of.*—A general and unlimited power of attorney for the signing of a remonstrance against the granting of a license to retail liquors, continues until revoked by the voter who executes it.   p. 464.

13.   INTOXICATING LIQUORS.—*Remonstrances.—Form of.*—A remonstrance against the granting of a license to retail liquors, providing that the signers "empower and request [certain persons] or any one of them to sign our names to any and all remonstrance or remonstrances against [applicants for license], and also to file and present such remonstrance or remonstrances * * * and also to sign our names to any remonstrance or remonstrances against the granting of a license or licenses to any person whomsoever, * * * and to file and present" same, sufficiently authorizes and directs such attorneys to execute and file remonstrances for an indefinite time.   p. 465.

From Wabash Circuit Court; *A. H. Plummer*, Judge.

Application by George P. McClanahan for license to retail liquors, against which Edward Breeding and others remonstrate.   From a judgment for remonstrants, the applicant appeals.   *Affirmed.*

*D. F. Brooks,* for appellant.

*Fred I. King,* for appellees.

MYERS, J.—Appellant gave the statutory notice, and on February 5, 1908, filed his application before the Board of Commissioners of the County of Wabash for a license to sell intoxicating liquors in Lagro township. By and through an attorney in fact, appellee Breeding and 474 other voters of the township filed a remonstrance on January 3, 1908, against the granting of any license. On February 5 appellant filed a verified answer that the remonstrance was void and without legal force, and that the attorney in fact was wholly without authority from the remonstrators or any of them authorizing him to execute said remonstrance. There was a trial before the board of commissioners, a finding and judgment against appellant, an appeal to the circuit court, where the answer was refiled, a trial and finding had, and over a motion for a new trial, judgment against him, refusing a license.

The only error assigned is the overruling of appellant's motion for a new trial. It appears from the evidence that the remonstrance was signed by an attorney in fact, under the following power:

"Wabash County, State of Indiana.

We, the undersigned residents and legal voters in Lagro township, said county and State, do hereby respectively empower and request William Lewis, E. F. Gates and Fred I. King, or any one of them, to sign our names to any and all remonstrance or remonstrances against persons who may give notice of intention to apply for license to sell intoxicating liquors in said township, and also to file and present such remonstrance or remonstrances to the board of commissioners of said county, and also to sign our names to remonstrance or remonstrances against the granting of a license or licenses to any person whatsoever, to sell intoxicating liquors in said township, and to file and present such remonstrance or remonstrances to the board of commissioners of said county."

Under this authority, a remonstrance, filed on December 29, 1905, was signed by 399 of the 475 persons whose names were signed to the remonstrance filed January 3, 1908. As shown by the last preceding election, 381 voters constituted a majority of the legal voters of the township. Both remonstrances were signed and filed under the same authority.

The contention of appellant is that the attorneys in fact were without authority to execute the remonstrance filed January 3, 1908, for the reasons: (1) That the power of attorney as to 399 of the remonstrators had been executed for more than two years; (2) that the power had been extinguished by the remonstrance of December 29, 1905; (3) that the power vests a discretion in the attorneys in fact, as to when, or whether at all, they shall file remonstrances.

On the part of appellees it is contended that the instrument contemplates the repeated exercise of the power, and that there is no legal inhibition against so doing when, and as often as, it may be necessary to accomplish the desired result.

The question for decision depends upon the construction of the power of attorney, taken in connection with the statute respecting remonstrances against the granting 1. of liquor licenses. §8332 Burns 1908, Acts 1895, p. 248, §9. Powers or letters of attorney, in respect to their construction, are governed by the rules respecting the construction of written instruments in general. 18 Am. and Eng. Ency. Law, 871, and cases there collected. When addressed to subject-matter of a statute, or matters of substantive law, the statute or law enters into them as parts of them. *Stults* v. *Zahn* (1889), 117 Ind. 297; *Pennsylvania Co.* v. *Clark* (1891), 2 Ind. App. 146.

Their construction will be controlled by the language used, taken in connection with the intention of the donor and the object to be accomplished under the general 2. eral doctrines of agency. The intention, not the letter, should control. The instrument should be so

construed as to effectuate the object, if it can be ascertained. *Commonwealth* v. *Hawkins* (1885), 83 Ky. 246; *White* v. *Furgeson* (1902), 29 Ind. App. 144, 150. They are to be restricted in their construction to the purposes they are intended to accomplish, according to their import and language, but not to the extent of defeating those purposes, and in case of doubt, are to be construed against the donor when third persons are interested; but a strained construction should not be employed to defeat or embrace authority not intended. *Muth* v. *Goddard* (1903), 28 Mont. 237, 72 Pac. 621, 98 Am. St. 553.

Two inquiries present themselves: (1) Does the instrument by its terms, or from the objects sought to be attained, or from the intention to be gathered from it, purport to be a continuing power? (2) Can such power be a continuing one, in view of the provisions of the statute, or, if a continuing grant, is it in contravention of public policy? We consider the last proposition first, for if a continuing power cannot be created, the first proposition becomes immaterial.

The statute provides for a remonstrance by a majority of the voters, against both the individual applicants and the business itself, and, when exercised, prohibits the individual in the one case, and the business in the other, from being licensed for a period of two years. This proceeding, an application for license to which a remonstrance was filed, is a judicial proceeding—a civil action. *State* v. *Gorman* (1908), 171 Ind. 58; *Castle* v. *Bell* (1896), 145 Ind. 8, and cases cited.

The proceeding cannot be *ex parte,* but each applicant has a right to be heard upon the remonstrance. *Cain* v. *Allen* (1907), 168 Ind. 8; *Kunkle* v. *Abell* (1906), 167 Ind. 434; *Anderson* v. *Weber* (1907), 39 Ind. App. 443.

Voters may remonstrate against the individual or the business, through an attorney in fact. *Cain* v. *Allen, supra; Jones* v. *Alexander* (1906), 167 Ind. 395.

It is disclosed that, as to each remonstrance against the business, there must be a hearing as to any and all applicants within the two years the remonstrance is to run, and in case of remonstrance against the individual a hearing as to each.

It is admitted that, at the end of the two-year period, the voters have the right of remonstrance against the business itself, and so on indefinitely, each two years. If they can do so, they can, as we have seen, do so through an attorney in fact. But there is also a distributive power of remonstrance against individuals, and this extends to all applicants. It is argued that the statute, having fixed the life of the remonstrance at two years, evinces a policy of requiring the expression of the sentiment of the voters biennially, in analogy to the expression of the popular will by biennial elections, and that a new expression is required, and that on grounds of public policy this ought to be so. The power of regulation of the liquor business is referable to the police power, and that power is unlimited, and a continuing one, and one that cannot be surrendered. *Schmidt* v. *City of Indianapolis* (1907), 168 Ind. 631, 14 L. R. A. (N. S.) 787, 120 Am. St. 385; *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426; *Welsh* v. *State* (1890), 126 Ind. 71, 77, 9 L. R. A. 664; *Boston Beer Co.* v. *Massachusetts* (1877), 97 U. S. 25, 24 L. Ed. 989; Black, Intox. Liquors, §§24, 31, 33.

The State or the public cannot be said to be parties to the proceedings to obtain, or prevent the obtaining of, liquor licenses, and hence no question of public policy is involved in the inquiry. It is a purely private controversy under the existing statutes. *State* v. *Gorman, supra; Castle* v. *Bell, supra; List* v. *Padgett* (1884), 96 Ind. 126.

Public policy is a question of law, and not of fact. Greenhood, Public Policy, 123. The statute does not undertake

to make any declaration on the subject of the public
9. policy of the matter, but gives a right to individuals,
as such, to invoke a statute, and no legislative power
is delegated to them thereby. They invoke a statute by the
filing of a remonstrance containing their objections, and
upon these the law makes its own action depend. *Locke's
Appeal* (1873), 72 Pa. St. 491, 13 Am. Rep. 716; Black,
Intox. Liquors, §45.

The proposition should not be overlooked that the voters
do not suspend the operation of the statute, or determine
whether the law is in force in a particular locality,
10. for it is a general law, and in force throughout the
State, and the only question is whether, as private
individuals, they will avail themselves of its provisions.
*State* v. *Gerhardt* (1896), 145 Ind. 439, 33 L. R. A. 313;
Black, Intox. Liquors, §45.

The "public policy," of the law is that principle which
holds that no subject can lawfully do that which has a ten-
dency to be injurious to the public, or against the
11. public good, which may be termed the policy of the
law, or public policy, in relation to the administra-
tion of the law. Greenhood, Public Policy, 2. It is the mani-
fest will of the state. *Jacoway* v. *Denton* (1869), 25 Ark.
625. It is not the interest of parties alone which is to be
considered the true test as to the public policy, but in each
particular case, under the facts, the judicial inquiry is, Will
the enforcement of the contract be inimical to the public
interests? *Wakefield* v. *Van Tassell* (1903), 202 Ill. 41, 66
N. E. 830, 95 Am. St. 207, 65 L. R. A. 511.

When not controlled by the federal Constitution, or na-
tional treaties, or by the principles of commercial or mer-
cantile law, or by general jurisprudence of national appli-
cation, questions of public policy are governed by the con-
stitution and statutes of the several states, or the declarations
of their highest courts. It is local as to the states, as it is
within different subdivisions, when applied. *Hartford Fire*

*Ins. Co.* v. *Chicago, etc., R. Co.* (1899), 175 U. S. 91, 20 Sup. Ct. 33, 44 L. Ed. 84.

This statute (§8332, *supra*), while in force throughout the State and general in its operation, is one designed for the benefit of individuals, composing defined communities, who may enforce their rights under it, if they choose, as they may any other statutory right, as, for example, the opening of a highway, or the construction of a levee, or drain, and, while they may be in some sense in the public interest, they do not fall within the category of laws constituting a public policy, independently of the local desire or interest. Such statute is in the nature of a provision for private initiative, and local self-government, a local police power. *Gordon* v. *State* (1889), 46 Ohio St. 607, 23 N. E. 63, 6 L. R. A. 749; *Feek* v. *Township Board, etc.* (1890), 82 Mich. 393, 47 N. W. 37, 10 L. R. A. 69.

The fact that the State fixes the operation of the remonstrance for two years does not argue any disposition of the State, or intimation of policy, other than a frequent opportunity on the part of its citizens to make avail of the statute, either for or against the license, and is in effect only a general rule of self-government. It expressly confers the right of repeated remonstrances, a continuing right, and one which we have seen may be exercised through an attorney in fact, hence we see no violation of any public policy or individual right. We see no reason, in view of the character of the business itself, why one may not express his intention by a continuing power of attorney. There is no more reason for the power's being a restricted one than there is that, if the donor choose to do so, he should revoke the power, and it is not an instance where the rights of third persons or individuals are infringed. There is no such natural or inherent or inalienable right to sell intoxicants, nor is it such a right of property that it cannot be regulated by law. *Kidd* v. *Pearson* (1888), 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346; *Luton* v. *Circuit Judge, etc.*

(1888), 69 Mich. 610, 37 N. W. 701; *Jordan* v. *City of Evansville* (1904), 163 Ind. 512, 67 L. R. A. 613, and cases cited; *Sopher* v. *State* (1907), 169 Ind. 177, 14 L. R. A. (N. S.) 172; Black, Intox. Liquors, §48. We perceive no reason why any given community should be driven to a fresh initiative every two years, if they choose to exercise the right of indefinite opposition, by conferring the power to act upon individuals and, if the authority thus given is continuing in character, we perceive no objection to it, upon the general ground of agency, and to its continuance, when general, and directed to a subject of continuing character, until the general result is accomplished, unless the authority is revoked. The primary grant is an expression of the will of the donor until by his own act he chooses to change or modify it. *White* v. *Furgeson* (1902), 29 Ind. App. 144.

The language of the instrument before us is, "empower and request" the donees "to sign our names to any and all remonstrance or remonstrances against persons * * * [and] to remonstrance or remonstrances against the granting of a license or licenses." Read as we understand it, this is authority to sign "any remonstrance," or "all remonstrances," against individuals; that is, that it was recognized that there might be one or more applicants, and the necessity for more than one remonstrance. As to the other branch of the power, fairly construed, it is directed to a single "remonstrance," or to "remonstrances." As it is directed against the business, one remonstrance when effected, would operate for two years, and there was no reason for using the plural "remonstrances," unless it was intended to apply to remonstrances after the first, and we are required to give the whole instrument effect, if we can, and it is only by holding that the word "remonstrances," as used with respect to the clause directed against the business, as continuing in char-

acter, that it can be given any place in the instrument. We think it evinces the general policy and views of the donors, and, in the connection in which it is used, necessarily declares a continuing power, and is not violative of any public policy. This being true, the fact that the word "request" is used is no limitation upon the power, for the power is continuing, and to render the power effective, taken with the object to be attained, it involves in some sense a trust to be executed, a duty to be performed, and obligation to perform it, and is equivalent to a direction, as opposed to mere passive request, or indifferent suggestion, and there is no room for the exercise of discretion. It evinces a crystallized sentiment, coupled with language designed to make it effective, and sufficient for that purpose; otherwise it could have no object or intention. By accepting the power, it becomes in the nature of a trust, and is just as effective as if the donees had formally accepted in writing, and agreed to carry it out, and thus give it effect. If appellant's theory is correct there would be no obligation whatever. The instrument would be void as involving discretion. It was executed in view of the decision so holding. *Cochell* v. *Reynolds* (1900), 156 Ind. 14. That effect should not be attributed to it.

The judgment of the circuit court was correct, and is affirmed.