IROQUOIS UNDERWRITERS, INC. ET AL. *v*. STATE EX REL. MORGAN, ADMINSTRATRIX ET AL.

[No. 26,693. Filed February 1, 1937. Rehearing denied April 26, 1937.]

464

*Jackiel W. Joseph,* and *Theodore R. Dann, Thompson, Raab & Stevenson,* for appellants.

*William E. Reiley,* and *Edward P. Hart,* for appellees.

HUGHES, J.—This is an appeal from an interlocutory order granting a temporary injunction, enjoining and restraining the appellants from directly or indirectly

transferring certain monies from the State of Indiana to the State of Illinois.

It appears from the first paragraph of complaint that, on July 18, 1929, Fred Morgan was killed by being struck by an automobile driven and operated by Stanley Garner; that the administratrix of the estate of Fred Morgan, deceased, brought an action against the said Stanley Garner for the wrongful death of the decedent, and, on the 5th day of February, 1931, recovered judgment against said Garner in the Superior Court of Marion County, Indiana, in the sum of $2,500; that execution was issued upon said judgment, and execution was returned by the sheriff unsatisfied; that, prior to the year 1929, there was licensed under the laws of Indiana, a reciprocal insurance association under the name of Security Automobile Insurance Association, which Association continued in existence until on or about November 10, 1930; that said members of said association were authorized to exchange reciprocal or inter-insurance contracts providing indemnity among its members against loss arising out of the operation of automobiles by said members; that said association issued to said Stanley Garner one of its policies which was in full force and effect at the time of the killing of the decedent; that the said Iroquois Auto Insurance Underwriters is a reciprocal insurance association operating under a license issued said Association by the State of Illinois; that on November 1, 1930, the said Iroquois Auto Insurance Underwriters and the Security Automobile Insurance Underwriters assumed all liabilities of the Security Automobile Insurance association, which association delivered and assigned to said Iroquois Association all its assets. It is alleged that the Iroquois Association was under obligation to pay the amount of the judgment rendered against the said Garner.

It is further alleged that there is located in Indianapolis the principal office of the Iroquois Underwriters, Inc., which is attorney-in-fact for said Iroquois Auto Insurance Underwriters; that said Iroquois Underwriters, Inc., collects fees and premiums from the members of the Iroquois Auto Insurance Underwriters, and has in its possession within the State of Indiana monies and funds belonging to said Iroquois Auto Insurance Underwriters, with power and authority to make assessments on the members of the association sufficient to pay outstanding obligations of said Iroquois Auto Insurance Underwriters, which monies are sent to the State of Illinois to said underwriters, and which monies are due and payable on said amount of said judgment.

It is further alleged that an appeal from the judgment rendered in the Superior Court of Marion County was taken to the Appellate Court of this State, which affirmed the judgment of the lower court; that the defendant Iroquois Auto Insurance Underwriters paid all of the attorney fees in defending the action and in the appeal.

The plaintiff asks judgment against the defendants, Iroquois Underwriters, Inc., and the Iroquois Auto Insurance Underwriters, and against numerous named members of the Association for the sum of $2,500, and interest, the same being the amount of the judgment, and for a temporary injunction restraining and enjoining the defendants from sending monies out of the State of Indiana, which is the property of either the Iroquois Underwriters, Inc., or the Iroquois Auto Insurance Underwriters, and that, upon final hearing, said temporary injunction be made permanent.

In the second paragraph of complaint, the plaintiff asks for a declaratory judgment of the rights of the parties to the insurance contract, and that defendants be ordered to pay the appellees the sum of $2,500 with interest.

The cause was submitted to the court for trial on the plaintiff's petition for temporary injunction; and, thereafter, the court granted a temporary injunction. It is from this interlocutory order granting the temporary injunction that this appeal was taken.

The assignment of errors relies upon the proposition that the court erred in granting a temporary injunction.

The main question to be decided in this case is whether the contract of insurance issued to Stanley Garner is by its terms one of liability or indemnity. As said in the case of *Kingan and Company, Limited* v. *Maryland Casualty Company* (1917), 65 Ind. App. 301, 315, 115 N. E. 348:

> "Indemnity policies are, as a general rule, by virtue of their provisions and the nature of the insurer's undertaking grouped by the courts into two classes: First, those indemnifying against loss or damage; and secondly, those affording protection against liability. Under a policy of the first class, it is necessary that the insured show that he has suffered damage or loss as by actually paying the judgment fixing his liability in order that he may have recourse to such policy. Where a policy belongs to the second class, the insured may turn to it for relief as soon as his liability has become legally fixed and established, although he has not suffered actual loss, as by being required to discharge such liability."

The main difference between an insurance contract of indemnity and one to pay legal liability—is that, upon the former, an action can not be brought and a recovery had until the liability is discharged; whereas, upon the latter, the cause of action is complete when the liability attaches. If, in the instant case, the policy issued to Garner is one to indemnify against loss, it is necessary to show an actual loss or damage before they can be a recovery; but, if the policy is a contract to protect the assured against liability merely, then an action may be maintained as soon as the

liability is legally imposed, regardless of the question as to whether any actual loss or damage has been suffered. *Campbell, Receiver* v. *Maryland Casualty Company of Baltimore, Maryland,* (1912), 52 Ind. App. 228, 97 N. E. 1026.

It is necessary to examine the terms of the policy to determine its meaning and into which class it falls.

Under the terms of the policy, the association agrees to indemnify the subscriber as follows:

"4. Against loss from liability imposed by law upon the Subscriber for damages on account of bodily injury, including death resulting therefrom, accidentally inflicted upon any person not in the employ or household of the subscriber, or related to him by blood or marriage, during the contract period, or any continuation thereof and directly caused by the use of or operation of any automobile described herein, for the purposes named in the warranty Number Five of this policy."

Subsection (g) of section five provides:

"No action shall lie against the Association or any Subscriber thereof to recover for any loss under this contract unless it shall be brought by the subscriber named in the warranty herein, for moneys actually paid by him in legal tender of the United States in satisfaction of a final judgment after actual trial of the issue."

It seems to us that the meaning of the foregoing language is perfectly clear, and that but one conclusion can be reached therefrom, and that is there is created an indemnity instead of liability insurance; and no action shall lie under the policy unless for loss actually sustained and paid. Sub-section (g) of section five creates what is known as a "no action clause" which has led to much confusion in the decisions of the different jurisdictions of the country. In the instant case, however, we think the language is so clear that there can be but one interpretation made. Such a clause, as above set out, has been held

by many of the courts of last resort in this country to create an indemnity, as distinguished from liability insurance. Many cases are collected and cited in the annotation in the case of *Luger* v. *Windell* (1921), 116 Wash. 375, 199 Pac. 760, 37 A. L. R. 641. Among the cases cited is the case of *Campbell* v. *Maryland Casualty Company, supra*. The provision of the policy in the case of *Luger* v. *Windell* is very similar to the one in the instant case, and the court, in discussing the provision, said (p. 377) :

> "The question in this connection is whether a policy containing such provisions is a liability or an indemnity policy. The provisions quoted are identical in effect, and nearly so in language, with the provisions of the policy considered by this court in *Ford* v. *Aetna L. Ins. Co.*, 70 Wash. 29, 126 Pac. 69. The opinion in that case, written by Judge Gose, is a masterly review of the question, upon both reason and authority, and decides that a policy with those conditions is a policy of indemnity, and that a judgement creditor, when his judgment remains unpaid, cannot, by garnishment, compel its payment from the insurance company which had insured the judgment debtor."

In the case of *Campbell* v. *Maryland Casualty Company, supra,* one of the conditions of the policy was as follows (p. 232) :

> " 'No. 8. No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue. . . .' "

It was held that such a provision of the contract was to indemnify the assured against loss, and not to protect it against liability. The policy, however, carried a "slip," or "rider," which the court held modified the policy and the language above quoted so that the policy sued on was made to cover liabilities against the assured as well as losses.

It seems to us that the language contained in subsection (g) of section five, known generally as the "no action clause," is so clear and explicit that there can be no doubt of the intention of the parties to the contract, and that was that no action should lie against the association, or any subscriber thereof, to recover for any loss, unless it should be brought by the subscriber named in the contract for moneys actually paid by him in satisfaction of a final judgment after actual trial of the issues. This was the agreement made by the parties, and the court cannot make another contract for them. We realize in the instant case that such an indemnity contract works an injustice for the reason the insured, Garner, is insolvent; and, although a judgment is rendered against him, it cannot be satisfied in full or in part, because of his insolvency, by recourse to the association. The legislature of 1935 saw the injustice of such a situation by approving an Act concerning insurance where the insolvency or bankruptcy of the person insured will not prevent recovery by the person injured or killed. Acts 1935, ch. 162, p. 588, sec. 177.

The appellee, Morgan, administratrix, contends that the appellants are estopped from denying liability because: (a) Appellants took over the defense; (b) they assisted Stanley Garner is declaring himself insolvent, and took advantage of it; and (c) in taking over the Security Automobile Insurance Association, they agreed to pay all the liabilities and obligations of the Security Automobile Insurance Association, and (d) in addition to that, the "no action clause" in the policy was against public policy and void.

The evidence shows that the Iroquois Auto Insurance Underwriters paid the expenses of the appeal of the Garner suit to the Appellate Court, including the attorney fees and cost of transcript. Does this fact estop the appellants from denying liability? It is

provided in the policy that the association will, at its own cost, subject to certain limitations, defend, or, at its election, settle any claim or suit for damages by reason of personal injury, or damage to property of others, arising out of an accident covered by the policy, providing the subscriber gives proper notice and co-operation in securing information.

We cannot see any elements of an estoppel in this provision. It is part of the provision of the contract of insurance, one of the primary purpose of which was, doubtless, to increase the sale of insurance. Such a provision is an attractive one to a person who is taking out insurance to know that, if at any time an action for damages is lodged against him, he will be defended by attorneys furnished by the company without cost to him. And, moreover, such an obligation is a benefit and privilege for the protection of the insurance company to select its own attorneys to defend the action which is to fix its liability, rather than to leave it in the hands of others who are strangers to the company, and not subject to its control.

It is also insisted that the appellants assisted Stanley Garner in having himself declared insolvent, and, for this reason, appellants are estopped from denying liability. There is no evidence in the record to substantiate this charge.

It is further contended that the appellants are estopped to deny liability for the reason that, in taking over the Security Automobile Insurance Association, the appellants agreed to pay all the liabilities and obligations of the Security Automobile Insurance Association. It was stipulated that "on or about November 1, 1930, the Iroquois Insurance Underwriters by written agreement assumed all liabilities and obligations of the Security Automobile Insurance Association." The insurance contract between Garner and the association

being indemnity instead of liability insurance, under the terms of the contract, the association is not liable until the subscriber has suffered an actual loss; that is, until the subscriber has actually satisfied and paid in money the amount recovered in a final judgment. Since, as shown by the evidence, the subscriber has not suffered an actual loss under the terms of the contract, there is no liability or obligation against the Security Automobile Insurance Association; and, therefore, none against appellants, the Iroquois Insurance Underwriters.

It is contended finally that the "no action clause" is against public policy. As defined by this court in the case of *McClanahan* v. *Breeding et al.* (1909), 172 Ind. 457, 463, 88 N. E. 695:

> "The 'public policy' of the law is that principle which holds that no subject can lawfully do that which has a tendency to be injurious to the public, or against the public good, which may be termed the policy of the law, or public policy, in relation to the administration of the law. . . . It is not the interest of parties alone which is to be considered the true test as to the public policy, but in each particular case, under the facts, the judicial inquiry is, Will the enforcement of the contract be inimical to the public interests?"

Again, this court, in the case of *Hogston* v. *Bell* (1916), 185 Ind. 536, 544, 112 N. E. 883, has quoted with approval the following statement contained in 6 R. C. L. 710:

> " 'Without minimizing the importance of the doctrine that contracts should not be enforced if they contravene public policy, many courts have cautioned against recklessness in condemning contracts as being in violation of public policy. Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well

established rule of law. Other courts have approved the remark of an English judge that public policy is an unruly horse astride of which one may be carried into unknown paths. Considerations such as these have led to the statement that the power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt."

In the case of *Corns* v. *Clouser et al.* (1894), 137 Ind. 201, 204, 36 N. E. 848, the following language is quoted with approval from the case of *Richmond* v. *Dubuque, etc. R. R. Co.* (1868), 26 Iowa 191, 202:

"... the power of courts to declare a contract void for being in contravention of sound public policy, is a very delicate and undefined power, and like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt."

It is undoubtedly true that "where there is no statutory prohibition, the courts do not readily pronounce an agreement invalid on the ground of policy or convenience, but, on the contrary, are inclined to leave men free to regulate their affairs as they think proper." 6 R. C. L. 711.

Such contracts as the one before us have been considered by many of the courts of this country, and, so far as we are informed, none have been held invalid on the grounds that they are against public policy. Such contracts have been upheld as valid, and it is one's own free choice if he chooses to enter into such a contract of insurance. Such insurance contracts are permitted by the law of our State, and we cannot say that it is against public policy.

Other questions have been presented, but, in view of the conclusion we have reached, we do not consider it necessary to consider them.

Judgment reversed.