Lori CONNELL, Appellant (Plaintiff below),

v.

AMERICAN UNDERWRITERS, INC., Attorney-in-Fact for the Subscribers at American Interinsurance Exchange, Appellee (Defendant below).

No. 3–1082A271.

Court of Appeals of Indiana, Third District.

Sept. 22, 1983.

Rehearing Denied Nov. 6, 1983.

Robert G. Berger, Hammond, David S. Stevens, East Chicago, for appellant.

James K. Whitaker, James K. Whitaker & Associates, Hammond, for appellee American Underwriters, Inc.

STATON, Judge.

Lori Connell was injured in a two-car accident with an uninsured motorist approximately one month after the expiration of her car insurance with Mid-Century Insurance Company. Lori, who lived with her parents, attempted to claim uninsured motorist coverage under her father's car insurance with American Interinsurance Exchange (Insurance Company). The trial court granted summary judgment to the insurance company; it determined that because Lori was not an "insured" person under the liability section of her father's policy, she could not benefit from this uninsured motorist coverage. Lori appeals and contends that even though she owned the car involved in the accident and even though it was not covered in her father's policy, law and public policy require that her father's policy be expanded to insure relatives and residents of his household.

Affirmed.

I.

Definition of Insured

■ Trial courts grant summary judgments pursuant to Ind. Rules of Procedure, Trial Rule 56, to terminate cases without factual dispute and which may be determined as a matter of law. Although TR. 56 helps expose spurious cases and eliminate undue burdens on litigants, the courts must exercise caution to ensure a party of his right to a fair determination of a genuine issue. Improbability of recovery by one party does not justify summary judgment for the opposition. *Bassett v. Glock* (1977), 174 Ind.App. 439, 443, 368 N.E.2d 18, 20–21.

■ Summary judgments result when the court applies the law to undisputed facts. It may consider affidavits, depositions, admissions, interrogatories, and testimony. *Bassett, supra.* In addition, the court must consider as true the facts set forth in the opposition's affidavits and liberally construe the discovery in his favor. *Poxon v. General Motors Acceptance Corp.* (1980), Ind.App., 407 N.E.2d 1181, 1184.

■ On review of a grant of summary judgment this Court must determine if there exists any genuine issue of material fact and whether the law was correctly applied. *Hale v. Peabody Coal Co.* (1976), 168 Ind.App. 336, 339, 343 N.E.2d 316, 320. Any doubt about the existence of a genuine issue of material fact must be resolved against the moving party. Moreover, even if the facts are undisputed, summary judgments are inappropriate when the evidence before the court reveals a good faith dispute as to the inferences to be drawn from those facts. *Id.*

The parties agree that the facts are undisputed. The question before us then is whether the trial court properly applied Indiana law. Lori contends that even if she may not fall within the definition of "insured" in the liability section of her father's insurance policy, she is an "insured" under the definition in the uninsured motorists section. She asserts that the definition of "insured" in the liability section conflicts with the definition of "insured" in the uninsured motorists section to the extent that the definition of "insured" is ambiguous. She requests that we deal with this alleged ambiguity by construing the policy in her favor and by granting her uninsured motorists benefits.

■ Indiana law requires that we resolve all ambiguity in insurance policies in favor of the insured. *Vernon Fire and Casualty Insurance Co. v. American Underwriters, Inc.* (1976), 171 Ind.App. 309, 313, 356 N.E.2d 693, 696. However, a conflict between the two definitions of "insured" does not necessarily mean that ambiguity exists.

*Id.* A conflict may be easily resolved where the meanings are clear. *Id.*

Persons defined as "insureds" under the liability section of an insurance policy are those for whom the legislature intended uninsured motorist benefits. *Indiana Lumbermens Mutual Insurance Company v. Vincel* (1983), Ind.App., 452 N.E.2d 418 (1983); *Indiana Farmers Mutual Insurance Co. v. Speer* (1980), Ind.App., 407 N.E.2d 255, 258, 59; *Vernon Fire, supra* 356 N.E.2d at 696. Therefore, Lori is entitled to uninsured motorist benefits under her father's insurance policy only if the definition of "insured" in the policy's liability section unambiguously includes Lori.

The definition of "insured" in the liability section of the policy is:

"Persons Insured. The following are insureds under Part I:

(a) with respect to the owned automobile.

(1) the named insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (2) above;

(b) with respect to a non-owned automobile.

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer,

provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b)(1) or (2) above."

This definition confines an "insured", other than the named insured, to one driving either an "owned" or "non-owned" automobile. The policy defines an "owned" and "non-owned" automobile as follows:

"*owned automobile*" means

(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded.

(b) a trailer owned by the named insured,

(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided

(1) it replaces an owned automobile as defined in (a) above, or

(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or

(d) a temporary substitute automobile; 'temporary substitute automobile' means any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; '*non-owned* automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;" (Emphasis added.)

We must read these two sections together to determine whether Lori is an "insured" and thereby entitled to uninsured motorist benefits under her father's policy.

Lori does not fall within the policy's definition of "insured" because the car involved in the accident was neither an "owned" or "non-owned" automobile. Looking at the definition of an "owned" automobile, Lori's car was not described in

her father's policy as required by section a. Her car does not qualify as "owned" under section b or c because she owned the car; her father, the named insured, did not acquire it for her use. Section d does not apply to Lori's car because she owned her car; the facts do not show that it was provided as a substitute. Lori's car was not an "non-owned" automobile because she owned it; no facts show that it was merely furnished for her use. Thus, the definition of "insured" in the liability section of her father's policy clearly does not include Lori.

## II.

### Exclusionary Clause

Lori contends that the policy definition of "insured", which restricts coverage to those driving an "owned" or "non-owned" automobile, works as an exclusion. She alleges that such an exclusion is an attempt to qualify the requirements of the Uninsured Motorists Statute. IC 1979, 27–7–5–1 (Burns Code Ed.).[1] She asserts that her father's insurance policy must cover his relatives or residents of his household to comply with the minimum requirements of this statute. We disagree.

▪ The Uninsured Motorist Statute requires that all persons who come within the policy's definition of an "insured" are entitled to uninsured motorists benefits for the amount he would have recovered if the uninsured motorist had maintained liability insurance. *Vincel, supra* 452 N.E.2d at pp. 425–426. It reads in pertinent part:

"27–7–5–1 [39–4310]. Motor vehicle liability—Noninsured vehicle coverage—Rejection in writing.—*No automobile* liability or motor vehicle liability policy or *insurance* insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be delivered* or *issued* for delivery in this state with respect to any motor vehicle

registered or principally garaged in this state, *unless* coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Acts 1947, chapter 159, sec. 14 [9–2–1–15], as amended heretofore and hereafter, under policy provisions approved by the commissioner of insurance, for the protection of *persons insured thereunder who are legally entitled to recover* damages *from owners or operators of uninsured motor vehicles* because of bodily injury, sickness or disease, including death, resulting therefrom." (Emphasis added.)

Recently, this Court held that this statute does not require automobile insurance policies to provide uninsured motorist benefits to any particular class of insureds such as relatives or residents of the named insured's household. *Vincel, supra* at 424. The Court further stated that there can be no violation of the statute unless the uninsured motorist section of the insurance policy excluded coverage to persons who qualify as insureds in the policy's liability section. *Id.* Because Lori does not fall within the definition of "insured" in the liability section and because the uninsured motorist section in the policy allows coverage to all those who qualify as "insureds" under the liability section, the policy does not violate the Uninsured Motorists Statute. Automobile liability insurers need only provide liability coverage for the owner of the insured auto and for persons using the automobile with the owner's permission. IC 1976, 27–1–13–7. (This provision was not changed by the 1981 amendment.) *Vincel, supra* at 423–424. All coverage beyond the statutory requirements is a matter of contract between the parties which we will not disturb unless it clearly violates the Statute. *Id.* at 424–425.

In upholding a policy exclusion of uninsured motorist coverage to relatives or residents of the named insured's household who owned their own cars, the Court in *Vincel* stated:

1. This statute was in operation at the time of Lori's accident. It has since been recodified in

IC 1982, 27–5–7–2 (Burns Code Supp.).

"If in passing the Statute the legislature intended that all resident relatives of the named insured be provided uninsured motorist coverage irrespective of whether such relatives own their own cars, it could have expressly so provided:

'It is equally within the province of the legislature to be more specific in its uninsured motorist coverage requirements. The General Assembly has not chosen to do so.

For us to extend coverage in this situation would be to rewrite the clear and unambiguous language of the insurance contract. This we are not empowered to do.'

*Hanley, supra,* 172 Ind.App. at 341, 360 N.E.2d at 254 [*United Farm Bureau Mutual Insurance Co. v. Hanley* (1977), 172 Ind.App. 329, 360 N.E.2d 247.] (citations omitted) (quoting *Ely, supra,* 148 Ind. App. at 591–92, 268 N.E.2d at 320) [*Ely v. State Farm Mutual Automobile Insurance Co.* (1971), 148 Ind.App. 586, 268 N.E.2d 316]. Absent clear direction from our state legislature, '[w]e decline to extend the public policy ... to allow a member of a family to purchase one liability policy and claim total coverage thereunder for the entire family while vastly increasing the risk to his or her insurer by knowingly owning and operating a fleet of uninsured vehicles upon the highways.' *France, supra,* 380 So.2d at 1156 [*France v. Liberty Mutual Insurance Co.* (Fla.App.1980), 380 So.2d 1155]. As Joseph made the conscious choice to own his own automobile, he, not Lumbermens, must bear the burden for his failure to insure that vehicle."

*Vincel, supra* at 426.

Likewise, the insurance company's exclusion of household relatives is valid in Lori's case and she must bear the burden for her failure to renew her own insurance.

The trial court properly applied the law and properly granted summary judgment for the insurance company.

Affirmed.

HOFFMAN, P.J., and GARRARD, J., concur.