ALLSTATE INSURANCE COMPANY,
Plaintiff,

v.

Cathy BOLES and Wilbur
Boles, Defendants.

Civ. A. No. IP83–834–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 30, 1984.

Richard Yarling, John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, Ind., for plaintiff.

John F. Townsend, Jr., Townsend, Hovde, Townsend & Montross, Indianapolis, Ind., for defendant Cathy L. Boles.

No appearance for Wilbur B. Boles.

## ENTRY

MOODY, District Judge.

This matter comes before the Court on the November 16, 1983 motion of the plaintiff for summary judgment on the issues of its June 24, 1983 amended complaint and the answer of defendant Cathy Boles of September 6, 1983. The motion was fully briefed as of December 7, 1983.

Allstate Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Northbrook, Illinois. Allstate is engaged in the business of insurance, including the sale and issuance of policies of automobile liability insurance containing uninsured motorist coverage, and in insuring risks arising from the operation of automobiles. The plaintiff is admitted to conduct business in the State of Indiana.

Defendant Wilbur B. Boles and Defendant Cathy L. Boles were married on December 10, 1972 and have resided together as husband and wife ever since. From September of 1981 until August of 1983 the

defendants resided together near the City of Indianapolis, Indiana.

Defendant Wilbur B. Boles is a citizen of the State of Indiana. Defendant Cathy L. Boles is a citizen of the State of Oregon.

The plaintiff issued Allstate Automobile Policy number 12913540 to Wilbur B. Boles, effective from August 10, 1981 through February 10, 1982 (hereinafter referred to as the Policy).

On November 12, 1981 Wilbur B. Boles was operating his automobile, listed as the covered automobile in the Policy, with Cathy L. Boles as a passenger when the automobile struck a pine tree which was lying in the roadway. Cathy L. Boles received injuries to her person as a result of the accident.

On May 17, 1983 Cathy L. Boles filed a Complaint for Damages in the Marion Superior Court, Civil Division, Room No. 7, Cause Number S783–0625. In her complaint, the defendant claims that Wilbur B. Boles' wrongful acts caused her to suffer injuries while she was a passenger on November 12, 1981. She claims permanent injuries, loss of income, and medical expenses, and seeks damages in the amount of fifty thousand dollars ($50,000.00).

On June 21, 1983 the action before the Court was commenced with the filing of the plaintiff's, Allstate Insurance Company, complaint for declaratory relief. An amended complaint was filed by Allstate on June 24, 1983.

In the amended complaint the plaintiff seeks five declarations. First, a declaration that the Policy does not provide any coverage for any claims of Cathy L. Boles against Wilbur B. Boles arising out of the November 12, 1981 accident is sought. In addition, the plaintiff seeks a declaration that the policy does not provide any coverage for claims for injuries and losses based upon the Policy's uninsured motorist provisions which arise out of the November 12, 1981 accident. The plaintiff also seeks a declaration to the effect that it is not obligated under the Policy to defend, assist in defending, or to expend any money in defending Wilbur B. Boles against the claims by Cathy L. Boles which arise out of the November 12, 1981 accident. A declaration that Allstate is under no duty to compromise, settle, or expend any money in attempting to compromise or settle any claims arising out of the November 12, 1981 accident asserted by Cathy L. Boles against Wilbur B. Boles is also sought. Finally, Allstate seeks a declaration that it is under no duty to pay or satisfy any judgment rendered involving any claim for damages by Cathy L. Boles against Wilbur B. Boles arising out of the November 12, 1981 accident.

The motion now before the Court was filed on November 16, 1983. The movant, Allstate, asserts an exclusion against coverage for injuries sustained by persons related to the insured by blood, marriage, or adoption. It is further argued by the movant that Cathy L. Boles' claims are not covered by the uninsured motorists provision in the Policy.

Defendant Cathy L. Boles does not contend that this action involves the uninsured motorist provision of the Policy and concedes that Wilbur B. Boles is not an uninsured motorist. The defendant argues that the household exclusion provision of the Policy is against public policy in the State of Indiana.

The Court has jurisdiction over the subject matter of and the parties to this action pursuant to 28 U.S.C. Secs. 1332, 2201 and 2202.

Section I, Coverage AA of the Policy provides insurance coverage for liability for bodily injury arising out of the ownership, maintenance and use of an automobile. With respect to Coverage AA, the Policy clearly states as follows:

## SECTION I

### LIABILITY PROTECTION

Automobile Liability Insurance
COVERAGE AA—Bodily Injury
COVERAGE BB—Property Damage

*Exclusions—what this Section of the policy does not cover*

This Section I does not apply to:

\*　　\*　　\*　　\*　　\*　　\*

7. bodily injury to any person who is related by blood, marriage, or adoption to an insured against whom claim is made if such person resides in the same household as such insured;

\*　　\*　　\*　　\*　　\*　　\*

(emphasis in original).

The common law doctrine of inter-spousal immunity in tort actions was abrogated in Indiana in 1972. *Brooks v. Robinson,* 259 Ind. 16, 284 N.E.2d 794 (1972). The Supreme Court of Indiana considered, *inter alia,* arguments to the effect that tort actions between spouses tended to disrupt the peace and harmony of the marriage and that inter-spousal tort actions would tend to promote fraud, collusion, and trivial litigation. *Id.* at 796–97. Both arguments were rejected, the latter for the reason that its adoption mandates the assumption that the court system is ill-equipped to deal with such litigation and would deny all relief to the class of litigants. It is the contention of Cathy L. Boles that to allow insurance policies to exclude coverage for spouses residing with the insured contravenes the public policy espoused in *Brooks.*

Among the Courts that have decided the issue at bar there is a difference of opinion as to whether insurance companies may limit the coverage offered so as to exclude coverage for spouses residing with the insured. Cathy L. Boles relies extensively upon *Mutual of Enumclaw Insurance Co. v. Wiscomb,* 25 Wash.App. 841, 611 P.2d 1304, *aff'd,* 95 Wash.2d 373, 622 P.2d 1234, *and,* 97 Wash.2d 203, 643 P.2d 441 (1982), wherein it was held that

the strong public policy enunciated in *Freehe v. Freehe* [81 Wash.2d 183, 500 P.2d 771 (1972)] *supra,* and society's interest in permitting injured victims of automobile accidents to recover against the tort-feasor, even if the tort-feasor is a member of the family or household, dictates that the exclusion clause in ques-

tion be declared null and void as contrary to public policy.

*Id.,* 611 P.2d at 1308. Allstate's position is best supported by the Idaho Supreme Court in *Porter v. Farmers Insurance Co.,* 102 Idaho 132, 627 P.2d 311 (1981), wherein it was held that

The right to sue a spouse for injuries caused by that spouse is an entirely separate matter from the contractual obligation of an insurance company to pay for those injuries. The fact that there is or is not an insurance policy in force covering an accident does not affect the right of one spouse to sue and obtain a judgment against the other spouse. Consequently we do not believe that the public policy expressed in the *Yellowstone* [97 Idaho 14, 539 P.2d 566 (1975)] case as support for the abrogation of spousal immunity prohibits a contractual exclusion of spousal coverage in an insurance policy.

*Id.,* 627 P.2d at 315. The Indiana Supreme Court has not addressed the validity of the insurance policy provision that is commonly referred to as the "household exclusion."

In Indiana, the law of contract is applied to the determination of insurance policy liabilities, with ambiguous or conflicting clauses being construed in favor of the insured. *See, e.g., American Economy Insurance Co. v. Liggett,* 426 N.E.2d 136 (Ind.App., 3d Dist.1981) (contract law applies); *Utica Mutual Insurance Co. v. Ueding,* 175 Ind.App. 60, 370 N.E.2d 373 (1977) (conflicting clauses construed favorably to insured); *United Farm Bureau Insurance Co. v. Pierce,* 152 Ind.App. 387, 283 N.E.2d 788 (1972) (ambiguous clause construed to favor insured). Although special rules of construction of insurance contracts have developed due to the disparity in bargaining power between insurers and insureds, *see Taylor v. American Underwriters, Inc.,* 170 Ind.App. 148, 352 N.E.2d 86 (1976), if a contract is clear and unambiguous the language therein must be given its plain meaning. *Vernon Fire & Casualty Insurance Co. v. American Underwriters, Inc.,* 171 Ind.App. 309, 356 N.E.2d

693 (1976). In particular, an insurance contract is not to be interpreted so as to remove from coverage a risk against which an insured intended to protect himself, unless the language of the policy clearly excludes coverage for such risk. *American States Insurance Co. v. Aetna Life & Casualty Co.*, 177 Ind.App. 299, 379 N.E.2d 510 (1978). An insurer may, however, "determine by its contract what risks it is undertaking to insure, provided policy provisions do not violate statutory mandates or are not against public policy." *Cincinnati Insurance Co. v. Mallon*, 409 N.E.2d 1100, 1103 (Ind.App., 2d Dist.1980). *Accord Asbury v. Indiana Union Mutual Insurance Co.*, 441 N.E.2d 232, 236–37 (Ind.App., 1st Dist.1982); *American Economy Insurance Co. v. Liggett*, 426 N.E.2d 136, 146 (Ind.App., 3d Dist.1981) (Staton, J., concurring). *See also Jordan v. John Hancock Mutual Life Insurance Co.*, 222 F.2d 210 (7th Cir.1955); *Gulf Insurance Co. v. Tilley*, 280 F.Supp. 60 (N.D.Ind. 1967). Public policy has been described as

> a term of vague and uncertain meaning, which it pertains to the lawmaking power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law.

*Iroquois Underwriters, Inc. v. State ex rel. Morgan*, 211 Ind. 463, 5 N.E.2d 908, 912 (1937). *See also State Farm Mutual Automobile Insurance Co. v. Perrin*, 331 F.2d 565 (7th Cir.1964); 17 Am.Jur.2d, *Contracts* Sec. 178.

■ The language of Allstate Automobile Policy number 12913540, appearing as Exhibit A to the Complaint, clearly excludes coverage for the risk of bodily injury to the spouse of the policyholder when such spouse resides in the same household as the policyholder. The exclusion does not violate the statutory mandate of the Indiana Uninsured Motorist Statute, I.C. 1976, 27–7–5–1. *United Farm Bureau Mutual Insurance Co. v. Hanley*, 172 Ind.App. 329, 360 N.E.2d 247, 254 (1977). There is no positive law prohibiting the household exclusion clause in any Indiana statute. Since the Supreme Court of Indiana has not dealt specifically with the household exclusion clause in automobile insurance policies, this Court must ascertain which view the State's Court would adopt. *See Farber v. Great American Insurance Co.*, 406 F.2d 1228, 1230 (7th Cir.1969).

In abrogating Indiana's common law spousal immunity, the Indiana Supreme Court held that the reasoning tendered for retention of the immunity was judicially unsound and that there was no legislation to the contrary. The two main arguments in favor of spousal immunity were (1) that tort actions between spouses would tend to disrupt the peace and harmony of the marriage and (2) that such actions would promote fraud, collusion, and trivial litigation. In response to the second argument, the Court found that

> The contention that tort actions between husband and wife will tend to promote fraud, collusion and trivial litigation—especially where insurance is involved—is ... unpersuasive. Those who advocate this view have simply concluded that since the *possibility* exists that tort litigation between husband and wife will not constitute a truly adversary proceeding, we should therefore close the courtroom doors to these parties and leave the injured to suffer his loss and the wrongdoer to escape his liability. To adopt such a view requires the blanket assumption that our court system is so ill-fitted to deal with such litigation that the only reasonable alternative to allowing husband-wife tort litigation is to summarily deny all relief to this class of litigants. It should be noted that this "reasonable alternative" is absolutely contrary to the spirit of our legal system—namely, that an injured party may seek redress for his injuries.

>     *     *     *     *     *     *

> The possibility of fraud and collusion exists in all litigation. However, we are not convinced that the danger is so great

when the plaintiff and defendant are also husband and wife that judicial relief should be summarily denied.

*Brooks v. Robinson,* 259 Ind. 16, 284 N.E.2d 794, 796–97 (1972). *See Boland v. Greer,* 422 N.E.2d 1236, 1239 (Ind.1981) (citing *Brooks* as abolishing doctrine of spousal immunity based on outmoded legal theories) (Hunter, J., dissenting to denial of transfer); *Swafford v. State,* 421 N.E.2d 596, 600 (Ind.1981) (citing *Brooks* as abolishing doctrine of spousal immunity based on outmoded legal theories); *Sidle v. Majors,* 264 Ind. 206, 341 N.E.2d 763, 766 (1976) (citing *Brooks* as upholding right of states to abolish or modify the common law). *See also McNevin v. McNevin,* 444 N.E.2d 320, 325 (Ind.App., 2d Dist.1983) (*Brooks* cited as abrogating common law rule of interspousal tort immunity); *Hosts, Inc. v. Wells,* 443 N.E.2d 319, 321 (Ind. App., 3d Dist.1982) (*Brooks* cited for proposition that Supreme Court of Indiana is empowered to alter, amend or abrogate the common law when the needs of society dictate); *Buffalo v. Buffalo,* 441 N.E.2d 711, 713 (Ind.App., 4th Dist.1982) (*Brooks* cited as authority that when no logic supports a rule of law the court will not apply the rule); *Wiggins v. Brazil Coal and Clay Corp.,* 440 N.E.2d 495, 501 (Ind.App., 1st Dist.1982) (*Brooks* cited as basis for abrogation of outmoded common law rules); *State of Indiana v. Dively,* 431 N.E.2d 540, 542 (Ind.App., 1st Dist.1982) (*Brooks* cited as basis for reinstating charge of burglary brought against a spouse for allegedly stealing from other spouse); *Memorial Hospital v. Hahaj,* 430 N.E.2d 412, 416 (Ind.App., 3d Dist.1982) (*Brooks* cited as support for the setting down of the rule that spouse incurring the medical expenses is primarily liable therefore); *Hunter v. State,* 172 Ind.App. 397, 360 N.E.2d 588, 603 (1977) (*Brooks* cited as absolutely abrogating interspousal immunity in Indiana); *Frampton v. Central Indiana Gas Co., Inc.,* 287 N.E.2d 902, 903 (Ind.App., 1st Dist.1972) (*Brooks* cited as abrogating common law rule of interspousal immunity).

As shown above, *Brooks* has uniformly been cited as support for one of two propositions. First is the proposition that the State courts are empowered to heed the dictates of society and overrule outdated common law rules. Next, the decision is cited to support the proposition that spouses are separate entities with respect to both criminal and civil matters. The defendant would have this case cited for a third proposition: that the right of one spouse to bring an action against the other spouse supercedes the latter's right to contract for insurance.

While the Supreme Court of Indiana did acknowledge the possibility of insurance being involved in actions by one spouse against another, the main thrust of the opinion was to open the Courts to a new class of litigants. The important concern of whether the holding affected the right to contract enjoyed by the defendant spouse was not considered. The failure to consider this issue would seem apparent and deliberate, given the long-standing judicial approval of the household exclusion clause. *See United Farm Bureau Mutual Insurance Co. v. Hanley,* 172 Ind.App. 329, 360 N.E.2d 247, 252 n. 7 (1977). The holding in *Brooks* is clearly addressed only to the issue of interspousal immunity. In rejecting the argument that the abolition of the doctrine would lead to collusion and fraud among the parties to an action, the Court dealt not with insurers' abilities to prevent such activities but with the ability of the Courts to do so. The instances of fraud and collusion against insurers far outnumber the instances of fraud and collusion against the Courts: it is common knowledge that not every insurance contract eventually is judicially enforced, i.e. there are many more insurance contracts than court cases.

The household exclusion clause has been interpreted only once in Indiana, in the 1977 decision of the Court of Appeals, Second District in *United Farm Bureau Mutual Insurance Co. v. Hanley,* 172 Ind. App. 329, 360 N.E.2d 247 (1977). In *Hanley* the clause was challenged as contrary to the Indiana Uninsured Motorist Statute.

After considering the Act as a whole the Court refused to adopt a strained construction to include coverage for persons specifically excluded from coverage by the insurance contract, citing four reasons in support of its decision. First, the long-standing judicial support of the clause was noted, along with the freedom of the parties to exclude risks from insurance contracts. *Id.* at 252 and n. 7. Next, the court recognized the absence from the Act of any language that traditional means of insurer protection from collusion might not be available to exclude coverage, *id.,* and the presence of language that liability be " 'subject to the terms and conditions of such coverage.' " *Id.* at 253. Thirdly, the household exclusion clause was recognized as an exclusion to general liability instead of restrictions on insurance coverage which specifically limited or eliminated uninsured motorist protection. *Id.* Finally, the court found that if the Legislature intended to nullify the household exclusion in the Act it could have expressly so provided. *Id.* at 254. The injured party in *Hanley* was the brother of the tort-feasor and resided with him.

A similar issue was considered by the same court in 1983. The exclusion clause in *Indiana Lumbermens Mutual Insurance Co. v. Vincel,* 452 N.E.2d 418 (Ind. App., 2d Dist.1983), excluded coverage from relatives residing with the insured that owned automobiles. A son living with his father was struck by an automobile driven by an uninsured motorist and sought coverage under his father's insurance policy. The Court here was forced to consider the ultimate question of whether the relative definition clause was contrary to public policy. *Id.* at 423. The clause was again construed as an exclusion limiting general liability, *id.* at 424, and the court described the extension of coverage to resident relatives as "additional coverage, ... the conditions of which are purely a matter of contract between the parties...." *Id.* The court concluded further "that Indiana Law did not require [the insurer] to include [relatives] in its automobile liability policy...." *Id.* at 425. Fur-

thermore, no statute was found to specifically prohibit the exclusion of relatives by class. *Id.* Finally, the court reiterated that if the Legislature intended that all resident relatives of the insured be provided coverage it could have expressly so provided. *Id.* at 426.

Most recently, in *Connell v. American Underwriters, Inc.,* 453 N.E.2d 1028 (Ind. App., 3d Dist.1983), an uninsured driver residing with her parents sought coverage under her father's insurance policy. The issue before the court was whether her father's insurance policy was required by the Indiana Uninsured Motorist Statute to cover relatives or residents of his household. In deciding against the plaintiff, the Court relief upon *Hanley* and *Vincel.* Specifically, *Vincel* was cited to the effect that " '[w]e decline to extend the public policy... to allow a member of a family to purchase one liability policy and claim total coverage thereunder for the entire family while vastly increasing the risk ... by knowingly owning and operating a fleet of uninsured vehicles upon the highways.' " *Connell v. American Underwriters, Inc.,* 453 N.E.2d at 1032 *quoting Vincel,* 452 N.E.2d at 426 (*quoting France v. Liberty Mutual Insurance Co.,* 380 So.2d 1155, 1156 (Fla.App.1980)).

The citations to the Court of Appeals of Indiana reflect the well-established judicial support for allowing parties to insurance contracts to determine what risks are to be afforded coverage in a particular transaction. In the absence of statutory requirements, Indiana courts have been reluctant to assume legislative power and require that particular types of insurance coverage be purchased. Likewise, the Courts have often refused to provide coverage that was clearly not intended to be purchased by the insured or provided by the insurer. The Supreme Court of Indiana would not characterize the household exclusion clause now before this Court as contrary to public policy, and therefore invalid, because to do so would contravene the well-established rule of law that where the terms of an insurance contract are clear and unambigu-

ous the parties are bound by those terms. Furthermore, the household exclusion clause does not contravene a positive statute.

■ If the defendant's argument that *Brooks* espouses strong public policy against the household exclusion clause was to be adopted it would be contrary to the clear language of the opinion itself. The parties have focused their arguments on the effect of *Brooks* on the power of the husband to contract away certain forms of liability coverage. Overlooked has been the discussion by the Court concerning the argument that the abolition of the doctrine of spousal immunity would disrupt the peace and harmony of the marriage. The Court noted that the persuasiveness of the argument has dwindled considerably and cited cases to the effect that a wife may bring an action of ejectment against her husband, *see Crater v. Crater*, 118 Ind. 521, 21 N.E. 290 (1889), that either spouse may enforce an agreement by the other to repay borrowed money, *see Hinton v. Gragoo*, 77 Ind.App. 563, 134 N.E. 212 (1922), and that a wife may maintain an action in partition against her husband, *see Pavy v. Pavy*, 121 Ind.App. 194, 98 N.E.2d 224 (*en Banc* 1951). *See Brooks v. Robinson*, 259 Ind. 16, 284 N.E.2d at 796. The Court's recognition of female spouses as independent individuals from their spouses reflects the law as provided under *Marriage: Rights and Liabilities Incident to Marriage Relation*, I.C. Secs. 1–9–1 to –14 (1976 & Supp.1981), wherein it is provided that

A married woman may take, acquire and hold property, real or personal, by conveyance, gift, devise or descent, or by purchase with her separate means or money; and the same, together with all the rents, issues, income and profit thereof, shall be and remain her own separate property, and under her own control, the same as if she were unmarried. And she may, in her own name, as if she were unmarried, at any time during the coverture, sell, barter, exchange, mortgage, lease, contract to sell, convey, or execute any instrument, contract, or commitment of any kind whatsoever affecting or in relation to her property, real or personal.

\* \* \* \* \* \*

Married women, without reference to their age, shall be liable for torts committed by them, and an action may be prosecuted against them for torts committed, as if unmarried. Husbands shall not be liable for the contracts or the torts of their wives.

I.C. Secs 1–9–2, 1–9–4. *See Memorial Hospital v. Hahaj*, 430 N.E.2d 412, 414 (Ind. App., 3d Dist.1982) ("married woman's non-liability for contractual obligations ... was set by the wayside of time's progressive road) (footnote omitted). Just as a woman that is married may contract to sell or purchase real estate, for example, she may contract for insurance protection. To conclude that the Supreme Court of Indiana intended to force husbands to purchase insurance protection for their wives would thus be contrary to both statutory and the well-established rule of law that a female spouse is no longer chattel of her husband. And, it would be contrary to the very nature of the Court's decision: married women have individual rights separate from their spouses. "The right to sue a spouse for injuries caused by that spouse is an entirely separate matter from the contractual obligation of an insurance company to pay for those injuries." *Porter v. Farmers Insurance Co.*, 102 Idaho 132, 627 P.2d 311, 315 (1981). Furthermore, the notion that a husband has a duty to furnish his wife the necessities of life, including medical and hospital care, was dissolved in *Memorial Hospital v. Hahaj*, where the Court set down the following rule:

The spouse incurring the medical expenses, whether husband or wife, is primarily liable for those expenses. If the property of that spouse should prove insufficient, then the financial resources of the marital relationship is secondarily liable for those expenses.

430 N.E.2d at 416. The law of the State of Indiana clearly rejects the defendant's argument.

There is no genuine issues as to any material fact. The law is with the plaintiff and against the defendant.

The November 16, 1983 motion of the plaintiff for summary judgment on the issues of the June 24, 1983 amended complaint must be and hereby is SUSTAINED.